MILLS *v.* BUTLER.

BUTLER *v.* MILLS.

1. WILLS—CONSTRUCTION—INTENT.

The testator's intention is the polestar guiding the court in the construction of a will.

2. SAME—INTENT—SURROUNDING CIRCUMSTANCES.

The testator's intention must be ascertained from a consideration of all the provisions of the will itself and in the light of the circumstances surrounding him at the time the will was made and his relations with the several objects of his bounty.

3. SAME — INTENT — SURROUNDING CIRCUMSTANCES — EXECUTION — DEATH.

Intention of testator in bequeathing his son sufficient capital stock of family corporation "as shall be required to give [the son] 51% of the outstanding stock" is to be determined as of the time of execution of the will and not as of the time of testator's death, at which time the son had transferred some of his shares to his wife.

4. SAME—BEQUEST OF SHARES OF STOCK IN FAMILY CORPORATION.

The number of shares of stock in family corporation bequeathed to testator's son in order to give him 51% of the outstanding stock *held,* to be 55 under evidence presented showing shares held by various members of the family at time of execution of the will, transfers made thereafter, and yet later family agreement setting forth whose shares were included in the 51% figure.

Appeal from Ingham; Hughes (Sam Street), J. Submitted January 5, 1961, and January 12, 1961.

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills § 1133 *et seq.*
[2] 57 Am Jur, Wills §§ 1136, 1137, 1144, 1145.
[3, 4] 57 Am Jur, Wills § 1145.

(Docket Nos. 42, 76, Calendar Nos. 48,636, 48,637.)
Decided September 23, 1961.

Bill by Lucius D. Mills and Lucile G. Mills against
Stahl Butler, trustee under the will of Frederick
E. Mills, deceased, to reform agreement for purchase
of corporate stock. Previously instituted action by
trustee against Lucius D. Mills and Lucile G. Mills,
for sums due on stock purchase agreement, trans-
ferred to equity side of court. Cases consolidated
for trial and on appeal. Decree for defendant trus-
tee denying reformation and dismissing bill, and
decree for plaintiff trustee for money judgment. Af-
firmed.

*Anderson, Carr & Street (Leland W. Carr, Jr.,* of
counsel), for individual plaintiffs and defendants.

*Newman, Chamberlain, Jones & Mackay (Donald
A. Jones,* of counsel), for trustee defendant and
plaintiff.

TALBOT SMITH, J. The problem in this case con-
cerns the proper interpretation of a clause in a will.

The testator, Frederick E. Mills, died in Novem-
ber of 1946. His family consisted of his wife, his
son, Lucius, who is a party to this litigation, and
3 daughters, 1 of whom was totally deaf. The par-
ents' concern for this young woman was obvious
and is a matter of record. They "wanted to provide
special protection for her so that whatever she was
to receive when both of them were gone would be
preserved during her lifetime, because she was a
young woman." A trust, accordingly, was set up,
in part for the use and benefit of this young woman.

The will of the testator, executed on December 29,
1945, contained the following clause:

"I hereby give and bequeath unto Lucius D. Mills, such number of shares of the capital stock of the Mills Dry Goods Company, as shall be required to give to said Lucius D. Mills, 51% of the outstanding stock of said corporation."

It is a fair inference from the record that at this time the stock ownership in the corporation involved was as follows: Frederick E. Mills, 222 shares; Emily Mills (his wife), 78 shares; Lucius Mills, 200 shares. Subsequent to this date, however, the stock ownership changed. It was testified by counsel who was involved in the "estate analysis" that, for tax purposes, "it would be advisable to take advantage of gift tax exemptions and have some of that stock [the reference here is to the stock of Lucius Mills] held in Lucile's name." Specifically "with regard to Lucius, some recommendations were made with regard to the making of gifts to his wife, that being Lucile Mills and Lucius Mills. That was actually accomplished, in part at least, in December of 1945." Lucile Mills testified that, at the time of the death of Frederick E. Mills, she had title to 50 shares of stock in the corporation, having then had it for approximately 1 year.

It was the desire of the testator that, upon his death, his son Lucius should have a controlling interest in the corporation. Consequently it was provided by agreement dated April 19, 1946 (making reference to a prior agreement bearing date of October 21, 1941), that the prior agreement be rescinded, with the exception, however, that "the provisions of paragraph 1 of said agreement relating to the 51% interest to be received by Lucius D. Mills upon the decease of Frederick E. Mills shall continue in full force and effect, except that 51% shall be construed to mean the total number of shares to be owned by said Lucius D. Mills and Lucile G. Mills, his wife."

Upon the death of the testator 500 shares of the Mills Dry Goods Company stock were issued and outstanding, 51% of which would be 255 shares. Lucius D. Mills was the owner of 150 shares and his wife, the owner of 50. Shortly after the testator's death Lucius Mills and his wife submitted to the then executor and trustee named in the will of Frederick E. Mills notice of their intention to purchase 167 shares of stock of the Mills Dry Goods Company, in exercise of their rights under the agreement dated April 19, 1946. Accordingly, a contract of sale was executed and this contract, specifically, is the matter in controversy. To proceed with estate matters, however, on August 4, 1949, the probate court for Ingham county entered an order allowing the executor's final account. It recited that all specific legacies had been paid, that the property on hand[1] was assigned to the executor in trust, and, shortly thereafter Mr. Lucius Mills executed a receipt for "55 shares Mills Dry Goods Company stock * * * in full payment and satisfaction of my distributive share." (Fifty-five shares, it will be noted, is the figure obtained by subtracting from the 51% of the outstanding shares, 255, "the total number of shares [200] to be owned by said Lucius D. Mills and Lucile G. Mills, his wife.")

From all of this, 2 cases have resulted and are before us. The first is an action at law brought by Mr. Butler, successor trustee, to recover the balance due under the contract for the 167 shares mentioned above. The second is an action in chancery by Lucius Mills and his wife to reform the contract upon the ground that a mutual mistake had been made in the

---

[1] "The following property is now on hand, belonging to said estate: Contract with Lucius D. Mills and Lucile G. Mills for purchase of 167 shares of Mills Dry Goods Company stock and 49 shares of Mills Apparel Company stock." The final account of the executor stated that the residue "is bequeathed in trust to Stanley G. Fontanna for the uses and purposes set forth in said will."

number of shares the estate had to sell. The law suit having been transferred to the equity side and consolidated with the pending chancery action, testimony was taken and decree entered. From it the Mills have appealed.

It is the principal argument of the appellants that the will was unambiguous and that it was improper for the trial chancellor to "resort to collateral and extraneous matters [*i.e.,* the surrounding circumstances and generally contemporaneous instruments] to determine its meaning." Appellee, on the other hand, asserts that "the will provision does not of itself, nor within the 4 corners of the document, spell out the specific number of shares to be included in the bequest. The will, instead, spells out a formula which must be applied to facts and circumstances dehors the will to learn the intent of the testator with regard to the number of shares of stock he intended to be included in his specific bequest. Appellee further claims that such a resort to collateral facts and circumstances is proper and permissible and necessary in construing the language of this will."

It has been said so often as hardly to bear repeating that the testator's intention is the polestar guiding the court in the construction of wills. There was a time, of course, when words employed in a will, or elsewhere, were themselves, in Wigmore's phrase, "tangible tools."[2] Each carried its own credentials within it, fixed and unalterable. The word itself was the weapon. Save for a certain persistence in the law of slander we now know otherwise. Words, whether those of a will or other, gather hue and cast from their surroundings, and are interpreted, as the courts figuratively put it, "in the light" of such surrounding circumstances. The testator's intention,

---

[2] 9 Wigmore, Evidence (3d ed), § 2470, at p 225.

we once said, "must be ascertained from a consideration of all the provisions of the will itself and in the light of the circumstances surrounding the testator at the time the will was made and his relations with the several objects of his bounty."[3]   So it was in a recent case,[4] where the will referred to "shares aggregating a total par or face value of $25,000," but the par value had been reduced since the time of execution of the will.   In reaching our decision as to the size of the bequest made, the testator's intent and the meaning with which he used the words "par value" were determined in the light of the pertinent surrounding facts and circumstances.

What, then, as to the testator whose will is before us, were "his circumstances" at the time of the execution of his will?   In the first place, it should be observed, the number of shares passing to Lucius Mills under the will was not specified in the will itself.   How many shares he would take under the will depended upon determinations founded upon matters outside the will, since the will was framed in terms of corporate control.   It is a fair inference, as we noted above, that at the time the will was executed Lucius Mills owned 200 shares of stock out of an outstanding 500 shares.   Upon the date of the execution of the will, then, the bequest to Lucius Mills of "51% of the outstanding stock of said corporation" would have been a bequest of 55 shares of stock.   These shares, with the 200 shares he then owned, would have given him the requisite 51%.   He argues, however, that since he later gave 50 shares to his wife and hence would need 105 shares for control, this is the amount of stock to which he is entitled under the will.

3 *Kirsher* v. *Todd*, 195 Mich 297. 309.
4 *Morrow* v. *Detroit Trust Co.*, 330 Mich 635.

The question, as we said, is the testator's intent. Is it conceivable that the testator intended that his son, by giving away his stock, for tax purposes, might thereby control the size of the bequest to him? If this were true he might, by giving away all of his own shares, take substantially the entire estate in order to obtain 51% of the stock, and this to the detriment of the widow and the handicapped daughter. But, conceivable or not, the case need not rest upon such considerations. We have further evidence of the testator's intent. For on April 19, 1946, a date after the execution of the will and after the gift to the wife, the testator and his son, together with their respective wives, joined in an agreement which clearly states the intent and meaning of the 51% provision. The "51% interest to be received by Lucius D. Mills upon the death of Frederick E. Mills," it provides, "shall be construed to mean the total number of shares to be owned by said Lucius D. Mills and Lucile G. Mills, his wife." In short, the testator and his wife, and his son Lucius and his wife, after careful examination of their estate and tax problems, and acting upon advice of counsel, agreed with each other, in substance and effect, that although Lucius might transfer to his wife for tax or other reasons whatever stock he wished, such transfers should not operate to increase the number of shares that he might claim by way of bequest. This, of course, bears upon the very point here in controversy, and it is conclusive thereof. There was no error, on the part of the trial chancellor, in deciding that Lucius D. Mills was to receive 55 shares of stock under his father's will.

Upon the view we have taken of the case it is unnecessary to consider the questions of *res judicata*

or estoppel. The decrees are affirmed. Costs in both cases to appellees.

KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.

DETHMERS, C. J., and CARR, J., did not sit.