ESTATE of Hamilton H. PEYTON, Deceased, John L. Peyton, Executor, and Olive Peyton, Executrix, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17210.

United States Court of Appeals
Eighth Circuit.

Oct. 15, 1963.

Patrick J. McNulty, of Bouschor & Mc-Nulty, Duluth, Minn., for petitioners; Royal G. Bouschor, Duluth, Minn., on the brief.

Benjamin M. Parker, Atty., Dept. of Justice, Tax Div., Washington, D. C., for respondent; Louis F. Oberdorfer, Asst. Atty. Gen., Tax Div., Lee A. Jackson, and Robert N. Anderson, Atty., Tax Div., Washington, D. C., on the brief.

Before SANBORN and BLACKMUN, Circuit Judges, and STEPHENSON, District Judge.

BLACKMUN, Circuit Judge.

This estate tax petition for review concerns the qualification of an estate's residue for the marital deduction under § 2056 of the Internal Revenue Code of 1954. The Tax Court, in an opinion not reviewed by the full court and not officially reported, resolved the issue against the estate. T.C. Memo 1962–205.

The case was submitted on stipulated facts and exhibits. These disclose:

The decedent, Hamilton H. Peyton, died testate on June 15, 1957, domiciled in Duluth, St. Louis County, Minnesota. He was 80 years old. He was survived by his wife, age 79, and by 3 adult sons, one of whom has since died, but by no issue of any then deceased child. His estate consisted of real and personal property situated in Minnesota.

The decedent's will, dated February 10, 1947, and executed more than 10 years before his death, was admitted to probate in St. Louis County. The widow and the eldest son were duly appointed as executors. Those paragraphs of the will having to do with the residue are quoted in the margin.[1]

1. "*4th*: I give, devise and bequeath all the rest of my property—real, personal, or mixed—now owned or which may hereafter be acquired by me, or in which I may now have or may hereafter acquire any interest, to my beloved wife, Olive Peyton, for and during her natural life.

"*5th*: I hereby authorize my said wife, Olive Peyton, at any time during her life, to sell, assign, transfer, mortgage and convey any and all of said property—real, personal or mixed—upon such terms and to such persons as in her judgment may seem best, and to execute proper deeds,

On June 16, 1958, prior to the filing of the federal estate tax return, Royal G. Bouschor, attorney for the estate, wrote the Commissioner requesting a ruling as to the availability of the marital deduction.[2] On June 27 the widow filed with the probate court a petition for additional time in which to elect to renounce or to take under the will.[3] This is permitted by Minn.Stat.Ann. § 525.212. The hearing on this petition, although ordered by the court, apparently never took place. On July 3 the Commissioner ruled that the residue did not qualify for the marital deduction because he regarded the interest as terminable within the meaning of § 2056(b) (1).[4]

On July 21 the widow filed with the probate court a "Petition for Interpretation of Provisions of Will". This re-

cited that the widow "does not know how the Court will decree said property" and that "in order for your petitioner to file a Federal Estate Tax return and take the proper marital deductions, it is necessary that an interpretation of said Will be given by the Court". The petition was set for hearing on August 4 upon notice to the heirs, will beneficiaries, and the Minnesota Commissioner of Taxation. This notice was given.

At the hearing only the widow and Mr. Bouschor, then appearing for her, were present. There was no appearance by any tax authority or by or on behalf of any of the adult sons of the decedent or of any issue of those sons. The hearing was short. Mrs. Peyton was the sole witness. After identifying herself as the

---

contracts, bills of sale, mortgages, or other written instruments and to invest and reinvest the proceeds thereof using the income derived therefrom during her lifetime; and in the event it should be necessary in her judgment for the comfortable maintenance of my said wife and children, my said wife is hereby authorized from time to time to use portions of the principal monies or such property for such purposes; and I hereby request that my said wife shall consult with my son, John Peyton, one of the executors of this, my Last Will and Testament, hereinafter named, before making any investments or changes in investments.

"6th: I hereby give, devise and bequeath all the rest, residue, and remainder of my property which is remaining after my wife's death to my three sons: JOHN L. PEYTON, NEWTON H. PEYTON, and LOUIS R. PEYTON, each an undivided one-third (⅓) thereof, share and share alike.

"7th: Should any such child die prior to the death of myself and my said wife, leaving any child or children, such surviving child or children shall take the same share of income and principal and at the same time, that their deceased parent would have received of such income or principal if living."

2. This letter reads in part:
"As attorney for the above-entitled estate, I have been requested by the Executors named in the Will to ask for a ruling from your office in regard to the interpretation of the Last Will and Tes-

tament of Hamilton H. Peyton for the purpose of determining whether or not the widow has the right of marital deduction under the terms of this Will.

"In accordance with the laws of the State of Minnesota, and after consultation with our Judge of Probate Court, all of the property under this Last Will will be decreed to Olive Peyton surviving spouse, in fee simple. As you will note, paragraph 4 gives this property to the decedent's wife for and during her natural life. This is followed by paragraph 5 which, in my opinion, complies with the 1954 Code, Section 2056, and allows Mrs. Peyton to have marital deduction for purposes of inheritance tax."

3. The petition recited:
"That under the terms of said will, your petitioner was given all of the property of the decedent for and during her natural life, and that the remainder was given to the three sons of the deceased, * * *

"That at the present time your petitioner does not know what interpretation the Court will place on the terms expressed in said Will, or how the Court will decree the property."

4. Although the record does not contain it, the Commissioner shortly before had apparently written a letter to the same effect to Congressman John A. Blatnik of the decedent's district. In that letter the marital deduction result which would ensue if the widow were to renounce the will was pointed out.

widow and stating that her husband had left a will, she testified:

"Q. In this will he left you a life estate and the remainder to your three boys?

"A. Yes.

"Q. You have not as yet filed a Federal Estate Tax?

"A. No.

"Q. You don't know how to take the marital deduction?

"A. No.

"Q. You want an interpretation as to how he is going to decree the property?

"A. Yes."

The probate judge asked counsel whether he intended to file a memorandum. After receiving an affirmative reply and after being advised that the estate tax return had to be filed before September 15, the court said: "File a brief, and after receiving the same we will issue an order as to the interpretation within five days".

The memorandum was filed. It suggested that the will was capable of two interpretations; that the first was that the decedent intended to grant the widow the "absolute property in his residual estate"; that the second was that the decedent provided for her only a limited estate in the residue during her life; that the first interpretation would result in a full marital deduction and a federal estate tax of $10,721; and that the second interpretation would provide the petitioner with no marital deduction and the tax would be $45,344. It was then argued that if the widow took "as a trustee for the remaindermen", the trust "is suspect for indefiniteness"; that M.S.A. § 502.-78[5] provides that the will grants "an absolute fee interest"; that the will was "home made"; and that any interest less than a fee simple absolute to the widow would frustrate the decedent's intent.

No opposing argument was advanced to the court.

On September 10 the probate court entered its order reading

"IT IS ORDERED that the Last Will and Testament of the above named decedent created no trust but gave to the surviving spouse, Olive Peyton, absolute power of appointment or encroachment of the whole thereof to herself; and that all of the residual estate be decreed to said Olive Peyton, surviving spouse, in fee simple absolute."

The widow then did not renounce the will.

Five days later the estate tax return was filed. The full marital, attributable in large part to the probate residue, was claimed.

Without waiting for the audit of the return the executors proceeded with the probate. A petition for settlement and distribution was filed and heard. The Minnesota inheritance tax was determined by the court on the basis that the entire residue passed to the widow. That tax was paid. A final decree of distribution was entered on January 8, 1959. This referred to the interpretation order of September 10, found that the widow was entitled to the residue, and assigned that residue to her. There was no opposition to the entry of the tax order or the decree. No appeal was taken from either and the time for appeal has expired.

The Commissioner in due course disallowed the marital deduction to the extent of the probate residue. This again was on the ground that the widow's residuary interest was terminable. The estate petitioned the Tax Court for redetermination. Judge Scott, in upholding the Commissioner, said:

"The facts in the instant case show that the decision of the Probate Court was collusive in the sense that it was obtained in a nonadversary proceeding, without a fair pres-

---

5. "Where an absolute power of disposition is given to a grantee or devisee of real or personal property and no reversion, remainder, or gift in default of the property undisposed of by the grantee or devisee is expressed in the instrument creating the power, the grantee or devisee is the absolute owner of the property."

entation of the question at issue and for the purpose of establishing the right of decedent's estate to a marital deduction for estate tax purposes, thus reducing the amount of estate tax for the benefit of all the parties whose property interests would have been adverse except for family relationship."

We affirm. We recognize, as the estate urges, that

"The right to succeed to the property of the decedent depends upon and is regulated by state law * * * and it is obvious that a judicial construction of the will by a state court of competent jurisdiction determines not only legally but practically the extent and character of the interests taken by the legatees." Uterhart v. United States, 240 U.S. 598, 603, 36 S.Ct. 417, 418, 60 L.Ed. 819 (1916).

Helvering v. Stuart, 317 U.S. 154, 161–162, 63 S.Ct. 140, 87 L.Ed. 154 (1942); Aquilino v. United States, 363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). In this case it is Minnesota law which determines the nature of the property interest passing to Mrs. Peyton. Estate of Awtry v. Commissioner, 221 F.2d 749, 753 (8 Cir., 1955); Poage v. Phillips, 202 F.Supp. 267, 269 (S.D.Iowa 1961). Further, an adjudication of property rights by a state court of competent jurisdiction is ordinarily conclusive for the determination of federal estate tax consequences flowing from those property rights. Blair v. Commissioner, 300 U.S. 5, 9–10, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Freuler v. Helvering, 291 U.S. 35, 43–45, 54 S.Ct. 308, 78 L.Ed. 634 (1934); Helvering v. Rhodes' Estate, 117 F.2d 509, 510 (8 Cir., 1941). Nevertheless, although it is state law which "creates legal interests and rights", the federal statutes "designate what interests or rights, so created, shall be taxed" and "must prevail no matter what name is given to the interest or right by state law". This is a matter of congressional intent. Morgan v. Commissioner, 309 U. S. 78, 80–81, 60 S.Ct. 424, 425–426, 84 L.Ed. 585 (1940); Helvering v. Stuart,

supra, pp. 161–162 of 317 U.S., pp. 144–145 of 63 S.Ct., 87 L.Ed. 154; Doll v. Commissioner, 149 F.2d 239, 241–242 (8 Cir., 1945), cert. denied 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430. Compare Mississippi Valley Trust Co. v. Commissioner, 72 F.2d 197 (8 Cir., 1934), cert. denied 293 U.S. 604, 55 S.Ct. 119, 79 L.Ed. 695.

The estate points out, too, that by the Minnesota Constitution, as amended in 1956, Article 6, § 6, the county probate court "has unlimited jurisdiction in law and equity for the administration of estates of deceased persons." It is a court of record. M.S.A. § 525.01. Its jurisdiction, although limited, is exclusive and in rem. "Its decrees of distribution are binding on everyone interested in the estate, at least if such decree covers a subject over which the court has jurisdiction". The court's principal function in administering a decedent's estate is "to determine who is entitled to share therein, the proportions in which they take, and to assign to each his share". The decree is res judicata and not subject to collateral attack. Bengtson v. Setterberg, 227 Minn. 337, 347–349, 35 N.W.2d 623, 628–629 (1949), and cases cited. This is so whether the decree is right or wrong for, as this court said in Hardenbergh v. Commissioner, 198 F.2d 63, 67 (8 Cir., 1952), cert. denied 344 U.S. 836, 73 S.Ct. 45, 97 L.Ed. 650, "the probate court having jurisdiction of the property of the estate * * * has jurisdiction to make a wrong decision".

It follows that the widow and the adult sons of the decedent, having taken no appeals from the tax order and the decree of distribution, are bound thereby. They could not now complain of the assignment of the entire estate to the widow.

There is no real controversy as to all this. It takes us, however, only up to and does not resolve the fundamental question which here confronts us, namely, whether this particular Minnesota probate decree, binding on the widow and the adult sons in its fixing of property rights as among them, forecloses the Commissioner with respect to federal

estate tax. The question is basic for if, by his will, the decedent created for his widow a fee simple absolute in the residue, that residuary interest is not terminable and qualifies for the marital deduction under § 2056.

Certain observations are to be made at this point:

■■ 1. The state court. As a federal tribunal we naturally hesitate to question or to disagree with any state court's conclusion as to applicable state law. Under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we would be bound, in the absence of fraud or collusion, by a determination of Minnesota law made by the Supreme Court of Minnesota, regardless of how appealing to us an opposite result might be. Here, however, the will's interpretation is one made by a probate court. This is a court inferior, despite the exclusiveness of its jurisdiction, to both the state district court, which in Minnesota is the one of original jurisdiction, Minn.Const. Art. 6, § 5, and to the state supreme court. Thus, while entitled to respect, the probate court's decision is not necessarily an authoritative one for us. King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948); Village of Brooten v. Cudahy Packing Co., 291 F.2d 284, 294 (8 Cir., 1961).

2. The state court proceeding. It is clear, and conceded, that the probate hearing on the interpretation of the will, which led into the state inheritance tax determination and the decree of distribution, was conducted in a non-adversary atmosphere. Although notice was given to the adult sons (but not to their issue) and to the Minnesota Commissioner of Taxation, none of these appeared. No notice was given to the federal tax authorities. Estate counsel this time represented the widow. While their memorandum did suggest a limited life estate as a possible alternative interpretation of the will, there was no expressed or real opposition to the advocated fee simple absolute.

The estate says, however, that the state proceeding is conclusive for federal tax purposes even though it was not adversary in nature, and it points out that in this case formal conflict would have presented the spectacle of mature sons in public contest with their aged mother.

■ There is language in some opinions which at first reading seems to imply that mere non-adversary character of the state proceeding vitiates it as precedent on a federal tax issue. See, for example, Estate of Stallworth v. Commissioner, 260 F.2d 760, 763 (5 Cir., 1958); Wolfsen v. Smyth, 223 F.2d 111, 113–114 (9 Cir., 1955); Brodrick v. Moore, 226 F.2d 105, 108 (10 Cir., 1955); Brodrick v. Gore, 224 F.2d 892, 896 (10 Cir., 1955). But we suspect that a close analysis of most of these opinions will disclose that they were concerned not so much with simple non-adverseness as with collusion of the type referred to in our next numbered paragraph. In any event, we certainly may say, so far as this case is concerned, that the non-adversary character of the probate proceeding does not by itself suffice to defeat its precedential value. This court has already indicated this much in Eisenmenger v. Commissioner, 145 F.2d 103 (8 Cir., 1944), which concerned an inter vivos trust's interpretation by a state court under Minnesota's in rem trust statutes, M.S.A. §§ 501.33–501.38. Direct holdings to this effect are Janes v. Reynolds, 57 F.Supp. 609, 613 (D.Minn.1944), Lindley v. United States, 57–2 U.S.T.C. Par. 9893 (D.Minn.1957), the Third Circuit cases of Gallagher v. Smith, 223 F.2d 218 (1955); Beecher v. United States, 280 F.2d 202, 204 (1960); and Estate of Darlington v. Commissioner, 302 F.2d 693, 694–695 (1962), and, seemingly, Henricksen v. Baker-Boyer Nat'l Bank, 139 F.2d 877, 881 (9 Cir., 1944) and Nashville Trust Co. v. Commissioner, 136 F.2d 148 (6 Cir., 1943). See, also, Commissioner v. Blair, 83 F.2d 655, 657 (7 Cir., 1936), reversed on other aspects, Blair v. Commissioner, supra, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Regulations § 20.2056(e)–2(d) (2). Judge Maris, speaking for the Third Circuit, en

banc, in Gallagher v. Smith, supra, pp. 224–225 of 223 F.2d has expressed it this way:

> "Whatever may be the case with respect to consent decrees, however, it is clear that if the question at issue is fairly presented to the state court for its independent decision and is so decided by the court the resulting judgment if binding upon the parties under the state law is conclusive as to their property rights in the federal tax case, regardless of whether they occupied adversary positions in the state court or were all on the same side of the question."

■ These very cases, however, also recognize, most of them specifically, that a state court determination obtained by collusion is not conclusive for the federal tax issue. Eisenmenger v. Commissioner, supra, p. 107 of 145 F.2d; Gallagher v. Smith, supra, pp. 225–226 of 223 F.2d; Estate of Darlington v. Commissioner, supra, p. 695 of 302 F.2d; Pitts v. Hamrick, 228 F.2d 486, 490 (4 Cir., 1955). And the non-adversary character of the state suit is relevant evidence of collusion. Gallagher v. Smith, supra, p. 225 of 223 F.2d.

■ 3. Collusion. As already noted, the cases disclose that, despite the usual controlling character of the state result, circumstances may exist where it is not conclusive. Sheer fraud, of course, is an obvious instance. See Chicago, R. I. & P. Ry. v. Callicotte, 267 F. 799, 16 A.L.R. 386 (8 Cir., 1920), cert. denied 255 U.S. 570, 41 S.Ct. 375, 65 L.Ed. 791. But it is not the only one. The Supreme Court, on at least two occasions, has intimated that the state proceeding is not controlling where it is collusive "in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional * * * tax". Freuler v. Helvering, supra, p. 45 of 291 U.S., p. 312 of 54 S.Ct., 78 L.Ed. 634; Blair v. Commissioner, supra, p. 10 of 300 U.S., p. 332 of 57 S.Ct., 81 L.Ed. 465. See Botz v. Helvering, 134 F.2d 538, 545 (8 Cir.,

1943). There are specific holdings to this effect in the lower federal courts.

> "The decree was obtained in a proceeding that was collusive in the sense that a decision was sought which would adversely affect the Government's right to additional estate tax." Estate of Faulkerson v. United States, 301 F.2d 231, 232 (7 Cir., 1962), cert. denied 371 U.S. 887, 83 S.Ct. 182, 9 L.Ed.2d 121.

> "By the word *collusion,* we do not mean to imply fraudulent or improper conduct, but simply that all interested parties agreed to the order and that it was apparently to their advantage from a tax standpoint to do so. We mean that there was no genuine issue of law or fact as to the right of the beneficiary to receive this income, and no *bona fide* controversy between the trustee and the beneficiary as to property rights under the trust instrument. The order of the state court frustrated the plan of the donor * * *." Saulsbury v. United States, 199 F.2d 578, 580 (5 Cir., 1952), cert. denied 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342.

Newman v. Commissioner, 222 F.2d 131, 136 (9 Cir., 1955); Estate of Sweet v. Commissioner, 234 F.2d 401, 404 (10 Cir., 1956), cert. denied 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79; First Nat'l Bank of Montgomery v. United States, 176 F.Supp. 768, 773–775 (M.D.Ala. 1959), affirmed 285 F.2d 123 (5 Cir., 1961).

In appropriate fact situations courts have not hesitated to conclude that disqualifying collusion did not exist and to recognize the state court decree as final. Examples are Northwest Security Nat'l Bank of Sioux Falls v. Welsh, 203 F.Supp. 263, 266–267 (D.S.D.1962), appeal dismissed on stipulation, 308 F.2d 367 (8 Cir., 1962) [appearance of counsel on both sides; "a valid motive, aside from the tax implications"]; Bartol v. McGinnes, 185 F.Supp. 659, 660–661 (E.D.Pa.1960) [existence of "strong reasons other than the avoidance of federal estate tax"]; Weyenberg v. United States, 135

F.Supp. 299, 303 (E.D.Wis.1955) [guardian ad litem's belief that a contest would be fruitless; absence of evidence that the guardian was derelict in his duty]; Estate of William A. Landers, Sr., 38 T. C. 828 (1962) [portion of decree adverse to the widow.]

■■■■ 4. The Minnesota law. We are persuaded, too, that the probate court was not correct in its enunciation of the Minnesota law. A testator's intention of course "shall prevail, if it is not inconsistent with the rules of law"; this intention "is to be gathered from everything contained within the four corners of the will, read in the light of the surrounding circumstances". In re Ordean's Will, 195 Minn. 120, 125, 261 N.W. 706, 708–709 (1935); In re Tuthill's Will, 247 Minn. 122, 125–126, 76 N.W.2d 499, 501–502 (1956). The decedent here gave the residue to his wife "for and during her natural life". He gave her powers of sale and investment "using the income derived therefrom during her lifetime". He authorized principal invasions but only when "it should be necessary in her judgment for the comfortable maintenance" not only of herself but of the children as well. And he provided for a gift over of what remained at her death. This smacks of something less than a fee simple absolute and equates, instead, with a life estate plus a limited power of invasion, on an ascertainable standard, for maintenance of herself and the children. Thus, on its face at least, the will falls short of establishing a fee in the residue.

■■■■ The estate does not argue the state law on this review but contents itself with the comment that "Right or wrong, the Probate Court finally established the law and the property rights of the parties insofar as the estate is concerned". In its memorandum to the probate court—introduced in evidence in the Tax Court trial—the estate seems to pin its fee simple argument on the provisions of M.S.A. § 502.78, quoted in footnote 5,

supra. That, however, applies to an "absolute power of disposition", unaccompanied by any "remainder, or gift in default" such as is present here.

Section 502.78 first appeared in the Session Laws of 1943, Ch. 322, § 18. It was in effect when the decedent's will was executed. This act replaced and changed the powers statutes theretofore existing. As a consequence, Minnesota decisions having to do with the old statutes [6] are of little assistance here. Dean Fraser's comment appended to the annotations, however, is pertinent:

"This result [a fee in the donee of the power] can be avoided in drafting by a limitation disposing of the property in case [the donee] does not dispose of it. Such a limitation clearly manifests an intent that [the donee] is to have a power and not complete property."

So also is the inheritance tax case of In re Bradley's Estate, 241 Minn. 394, 396–397, 63 N.W.2d 374, 376 (1954). There, although the court upheld an assessment of state inheritance tax against the life tenant upon the full value of the residue because of "sufficient economic benefits * * * to justify the tax", it also said, making no reference to § 502.78,

"It created a life estate in Gertrude * * * with the remainder over to Margaret * * * subject to the power granted to the life tenant '*to use and dispose of the same as she may see fit.*' The will clearly specifies that Gertrude * * * is to have a life estate. The language in no way purports to give her a fee. The remainder is likewise clearly created in express terms. The power granted to the life tenant is not sufficient in itself to create a fee, nor is it repugnant to the creation of the life estate." (footnote omitted)

■■■■ What, then, in the light of all this, do we have here? We have a situa-

5. Hershey v. Meeker County Bank, 71 Minn. 255, 73 N.W. 967 (1898); Ashton v. Great Northern Ry., 78 Minn. 201, 80 N.W. 963 (1899); Larson v. Mardaus,

172 Minn. 48, 215 N.W. 196 (1927); Beliveau v. Beliveau, 217 Minn. 235, 14 N.W.2d 360 (1944); Rise v. Park, 222 Minn. 444, 24 N.W.2d 831 (1946).

tion where the decedent's estate was planned and his will executed before the initial appearance of the marital deduction in § 361(a) of the Revenue Act of 1948; where the will was manifestly designed, as were so many pre-April 1948 plans, to avoid repeated estate taxation upon the successive deaths of the two spouses; where the decedent and his wife were approximately the same age; where the will was never thereafter revised in the light of the available marital deduction; where the will gave the residue to the widow "for and during her natural life", authorized principal invasion upon the limited and readily ascertainable standard of "comfortable maintenance" of herself and the children, and left the residue after the widow's death to the three sons or their "surviving child or children"; where counsel conferred with the probate judge as to the interpretation of the will before the submission of their request for a formal ruling; where counsel evidently had obtained the court's prior assurance that the estate would be decreed to the widow in fee simple; where the request for interpretation was obviously pointed toward the marital deduction; where no notice of the probate hearing was given to any federal tax authority; where estate counsel acted on behalf of the widow, even though the issue placed her and the children in opposing postures; where the presentation of the opposing side of the issue to the probate court was something less than complete; where federal estate tax savings were emphasized in the memorandum; where the fee simple result was advocated; and where the probate court's determination of the nature of the widow's interest was wrong under state law. The presence of all these factors justifies the Tax Court's determination that the probate proceeding was collusive within the concept of that term developed by the cases cited above. This court certainly cannot say that the Tax Court was clearly erroneous in its determination. The tax result may be unfortunate for the estate. Its avoidance, however, was for the de-

cedent to plan and not for his survivors to achieve by repair.

 What has been said also disposes of any possible contention that the widow possessed a sufficient power of appointment which in itself qualified her residuary interest for the marital deduction under the particular provisions of § 2056 (b) (5). United States v. Lincoln Rochester Trust Co., 297 F.2d 891 (2 Cir., 1962), cert. denied 369 U.S. 887, 82 S. Ct. 1160, 8 L.Ed.2d 287; Commissioner v. Estate of Ellis, 252 F.2d 109, 113–114 (3 Cir., 1958); Estate of Tarver v. Commissioner, 255 F.2d 913, 918–920 (4 Cir., 1958); Estate of Semmes v. Commissioner, 288 F.2d 664 (6 Cir., 1961); Piatt v. Gray, 201 F.Supp. 401 (W.D.Ky.1961); Regulations § 20.2056(b)–5(g) (3).

Affirmed.