OLD KENT BANK AND TRUST COMPANY, Mildred M. Campbell and Charles R. Sligh, Jr., co-executors of the estate of Kenneth H. Campbell, deceased, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant,

No. 16438.

United States Court of Appeals Sixth Circuit.

June 15, 1966.

Benjamin M. Parker, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on brief; Harold D. Beaton, U. S. Atty., Grand Rapids, Mich., of counsel, for appellant.

Peter Van Domelen, Grand Rapids, Mich., Warner, Norcross & Judd, Grand Rapids, Mich., on brief, for appellees.

Before PHILLIPS and EDWARDS, Circuit Judges, and WILSON, District Judge.*

PHILLIPS, Circuit Judge.

This appeal presents two questions:

(1) Is a federal court, in determining the marital deduction to which the estate of a decedent is entitled for federal estate tax purposes, conclusively bound by the construction of decedent's will adopted by a Michigan Probate Court in a decision from which no appeal was taken?

* Honorable Frank W. Wilson, United States District Judge for the Eastern District of Tennessee, sitting by designation.

(2) If not, what is the correct construction of the will here involved?

A deficiency was asserted against the co-executors ("executors") on the ground that the marital deduction claimed on the federal estate tax return was excessive under § 812(e) of the Internal Revenue Code of 1939, as amended.[1] The case was tried in the District Court upon a written stipulation of facts without oral testimony. The District Court disagreed with the Commissioner and entered judgment in favor of the executors in the sum of $38,358.40, plus $6,923.42 interest.

The District Court held that the construction of the will adopted by the Probate Court is conclusively binding in determining the marital deduction. For a detailed statement of the facts, including the complete texts of the will and the two codicils thereto, and pertinent parts of the trust instrument involved, reference is made to the opinion of the District Court, which is reported at 232 F.Supp. 970.

Kenneth H. Campbell, a resident of Ottawa County, Michigan, died testate May 18, 1954. His widow survived him.

Paragraph V of his will provided:

"If my wife, MILDRED M. CAMPBELL, shall survive me, I give, devise and bequeath to her outright so much of the rest, residue and remainder of my estate, whether real, personal or mixed, of which I shall die seized or possessed, or to which I may be entitled in any manner at my death, or over which I may have any power of appointment, and wherever the same may be situated, as will equal forty per cent (40%) thereof before deduction of taxes, claims and administration expenses."

1. SEC. 812 NET ESTATE

For the purpose of the tax of value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\* \* \* \* \*

(e) [as added by Sec. 361(a) of the Revenue Act of 1948, c. 168, 62 Stat. 110, 117] Bequests, etc., to Surviving Spouse.—

(1) Allowance of marital deduction.—

(A) *In general.*—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

(B) Life estate or other terminable interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under clauses (i) and (ii)—

(iii) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

\* \* \* \* \*

(3) [as added by Sec. 361(a) of the Revenue Act of 1948, c. 168, 62 Stat. 120] Definition.—For the purposes of this subsection an interest in property shall be considered as passing from the decedent to any person if and only if—

(A) such interest is bequeathed or devised to such person by the decedent; or

\* \* \* \* \*

(D) such interest has been transferred to such person by the decedent at any time; or

(E) such interest was, at the time of the decedent's death, held by such person and the decedent (or by them and any other person) in joint ownership with right of survivorship; or

\* \* \* \* \*

(G) such interest consists of proceeds of insurance upon the life of the decedent receivable by such person.

\* \* \* \* \*

At the time of the death of the testator, there was in effect an inter vivos trust established by the decedent under a trust agreement executed June 8, 1943. The provisions of the trust agreement reserved the life income to the decedent so long as he lived and also gave decedent the right to withdraw any part of the securities of the trust at any time or to terminate the trust after one year. Consequently, the trust assets, valued at $341,176.60, were included in the taxable estate of the decedent for federal estate tax purposes. The trust assets were not a part of the probate estate however, since they passed under the provisions of the trust instrument and not under the will.

Under Paragraph V of the will, the widow was entitled to forty per cent of the "estate." It is undisputed that forty per cent of the "estate" qualifies for the marital deduction. The problem for construction is whether the word "estate" as used in Paragraph V refers only to the probate estate or whether it also includes trust assets which passed under the inter vivos trust and not under the provisions of the will.

The Probate Court construed the word "estate" in Paragraph V to include the trust assets.

The District Court said:

"The provisions of Paragraph V, as the plaintiffs admit in their brief, may conceivably be subject to more than one interpretation. For although the widow's legacy is to be satisfied out of the probate assets, the question arises as to whether the amount of the legacy is to be computed by reference to the probate assets alone, or by reference to other assets of the decedent as well. If the amount of the bequest is computed by reference to the probate assets alone, the sum passing to the widow under Paragraph V is $117,-688.85. If the amount of the widow's legacy is computed by reference to both the probate assets and the trust assets, the sum passing to the widow under Paragraph V is $254,159.49.

"The construction placed upon Paragraph V, therefore, makes an enormous difference not only in the amount of the probate assets passing to the widow, but also in the amount of the residue, if any, available for distribution to the residual beneficiaries under Paragraph VI of the decedent's will.

\*    \*    \*    \*    \*    \*

"The Ottawa County Probate Court, as I have said in the recitation of facts, construed the will to mean that the word 'estate' as used in Paragraph V of said will, included the trust assets, and, therefore, the sum of $254,159.49 passed to the widow by reason of the legacy of Paragraph V.

"Paragraph V itself merely prescribes a formula by which the amount of a general legacy to the surviving widow can be determined. So, even though the widow's legacy is to be satisfied out of the probate assets, there is still a question of whether or not the amount of legacy is to be computed by reference to the amount of the probate assets alone, or by reference to other assets of the decedent as well. This precise question, however, was answered when the Ottawa County Probate Court decided that the word 'estate' as used in Paragraph V of the decedent's will should include the non-probate, or trust assets."

The proceedings in the Probate Court were initiated prior to the filing of the claim for refund and subsequent to the filing of the federal estate tax return. The executors submitted to the Probate Court a petition dated August 28, 1956, captioned "Petition for Construction of Will," praying for an order to the effect that the assets of the inter vivos trust should be included in the term "estate" in computing the amount of the bequest to the widow under Paragraph V. The petition for construction contained these averments:

"9. Petitioners are informed and believe that \* \* \* the property constituting said [inter vivos] trust \* \* \* is a part of his [decedent's]

estate, as that term is used, in Paragraph V of said Will.

"10. It is petitioner's opinion that in computing the amount of the specific bequest to Mildred M. Campbell under said Paragraph V, the assets of said [inter vivos] trust should be included."

Waivers of notice and consents to the petition were filed by the three residuary legatees. The waiver filed on behalf of The Kenneth H. Campbell Foundation for Neurological Research, one of the residuary legatees, was executed by a member of the same law firm which represented the executors in the proceedings for construction of the will. The waivers of the other two residuary legatees were signed by them personally, without appearance of counsel. All three consents contained language to the effect that the residuary legatees waived further notice of the proceeding and "do hereby consent to the granting of said petition forthwith."

Without conducting any hearings on the petition, the Probate Court entered an order placing the construction on the will which was sought by the executors and consented to by the residuary legatees. The order is as follows:

"STATE OF MICHIGAN

"THE PROBATE COURT FOR THE COUNTY OF OTTAWA

"At a session of said Court held on the 17th day of October, A.D. 1956.

"Present: Hon. Frederick T. Miles, Probate Judge.

"In the Matter of the Estate of

KENNETH H. CAMPBELL,    No. 25073 Deceased.

"On reading and filing the petition of The Michigan Trust Company, Mildred M. Campbell, and Charles R. Sligh, Jr., Co-Executors of the Estate of Kenneth H. Campbell, Deceased, praying for construction of the Will of said deceased, and notice of hearing thereon having been waived, and

"It appearing to the Court after examination of said petition and the Will of said deceased that some question exists as to whether the word 'estate' as used in Paragraph V of said Will was intended to include assets held by The Superior National Bank and Trust Company under a trust agreement with said deceased, and

"It further appearing to the Court that if the word 'estate' as used in said Paragraph V is construed to include said trust assets, that nothing will pass under Paragraph VI of said Will to Malcolm G. Campbell, and The Kenneth H. Campbell Foundation For Neurological Research, and

"It further appearing to the Court that the correct construction of said Will, in the light of the circumstances set forth in said petition, requires that the word 'estate' as used in Paragraph V of said will include said trust assets, the Court so finds, and orders that said Will be so construed.

(s) Frederick T. Miles,
Judge of Probate."

1) *Effect of Decision of Probate Court in Determining Amount of Marital Deduction.*

■ It is well settled that:

"The right to succeed to the property of the decedent depends upon and is regulated by state law (Knowlton v. Moore, 178 U.S. 41, 57 [20 S.Ct. 747, 44 L.Ed. 969]), and it is obvious that a judicial construction of the will by a state court of competent jurisdiction determines not only legally but practically the extent and character of the interests taken by the legatees." \Uterhart v. United States, 240 U.S. 598, 603, 36 S.Ct. 417, 418, 60 L.Ed. 819.

To like effect see Helvering v. Stuart, 317 U.S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154; Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 9, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 43–45, 54 S.Ct. 308, 78 L.Ed. 634.

The legislative history of the Revenue Act of 1948 relating to the changes made

in § 812(e) includes the following comment in the report of the Senate Finance Committee:

"If the surviving spouse takes under the decedent's will, the interest passing to her is determined from the will. In this connection proper regard should be given to interpretations of the will rendered by a court in a bona fide adversary proceeding." U.S.Code Congressional Service, p. 1226 (1948), Sen.Rep.No.1013, 80th Cong., 2d Sess.

■ However, as said in Peyton's Estate v. Commissioner of Internal Revenue, 323 F.2d 438, 442 (C.A.8):

"Nevertheless, although it is state law which 'creates legal interests and rights,' the federal statutes 'designate what interests or rights, so created, shall be taxed' and 'must prevail no matter what name is given to the interest or right by state law'. This is a matter of congressional intent. Morgan v. Commissioner [of Internal Revenue], 309 U.S. 78, 80–81, 60 S.Ct. 424, 425–426, 84 L.Ed. 585 (1940); * *."

■ Under the Rules of Decision Act, 28 U.S.C. § 1652,[2] the law of Michigan controls in determining the interest which passed to the widow under the will in the present case. In making such a determination in this situation, does the Rules of Decision Act require that a federal court be controlled by the construction of the will by a Michigan Probate Court? We conclude that this question must be answered in the negative.

In an early decision, Holbrook v. Cook, 5 Mich. 225, 228–229, the Supreme Court of Michigan commented upon the Probate Courts of that State as follows:

"It is true Probate Courts are 'courts of record,' being declared to be such by the Constitution, but they are not 'courts of law,' according to the ordinary use of the term. They derive their origin and jurisdiction from a source altogether distinct from the common law, and they exercise no functions peculiar to that system."

With respect to probate matters, the Probate Courts of Michigan possess only the limited jurisdiction conferred by statute. In re Cook's Estate, 366 Mich. 323, 328, 115 N.W.2d 98; In re Milner's Estate, 324 Mich. 269, 274, 36 N.W.2d 914; In re Estate of Meredith, 275 Mich. 278, 289, 266 N.W. 351, 104 A.L.R. 348; Rodgers v. Huntley, 166 Mich. 129, 132, 131 N.W. 524; Detroit L. & N. R. R. Co. v. Probate Judge, 63 Mich. 676, 680–681, 30 N.W. 598.

The statute defining the jurisdiction of the Probate Courts does not confer a general jurisdiction to construe wills. M.S.A. § 27.3178(19) et seq., Comp.Laws 1948, § 701.19 et seq. Jurisdiction over the construction of wills is vested in the Circuit Court, a court of original common law and chancery jurisdiction. Dudley v. Gates, 124 Mich. 440, 441, 83 N.W. 97, 86 N.W. 959; Byrne v. Hume, 84 Mich. 185, 191, 47 N.W. 679. Appeals from the Probate Court are to the Circuit Court. M.S.A. § 27.3178 (36), Comp.Laws 1948, § 701.36; Seilnacht v. Wayne Probate Court, 190 Mich. 461, 462, 157 N.W. 77.

Under decisions of the Supreme Court of Michigan, the Probate Court has limited jurisdiction of interpretation of wills when distribution is mandatory at the time of the disposition of the estate. Jones v. Harsha, 225 Mich. 416, 196 N.W. 624; Reibow v. Ensch, 220 Mich. 450, 190 N.W. 233, or when demand is made for immediate distribution during the course of administration. Bank of Saginaw v. Nason, 266 Mich. 595, 254 N.W. 217.

At the time the Ottawa County Probate Court entered its order construing the will in the present case, it does not appear that any demand had been made for immediate distribution of any part of the estate.

<hr>

2. § 1652. State laws as rules of decision
"The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress other-

wise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

■ The opinions of the Probate Courts and Circuit Courts of Michigan are not digested, published or made available to the bench and bar, are binding only on the parties to the particular cases and do not constitute binding precedents in the other courts of Michigan. In a diversity case, such opinions would not be binding on a federal court. King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608.

■ There is a definite federal interest in cases like this, involving the application of the federal estate tax laws. We hold that the order of the Probate Court is not binding and conclusive upon the district court or this court in determining the amount of the marital deduction under the federal estate tax statute. Second National Bank of New Haven v. United States, 351 F.2d 489, 494 (C.A. 2). The Congressional intent, as expressed in the report of the Senate Finance Committee quoted above, places emphasis upon whether or not the decision of the State court was rendered in "a bona fide adversary proceeding." It is not necessary for the proceeding in the Probate Court to be found to have been collusive in the sense of improper conduct. Estate of Pierpont v. Commissioner of Internal Revenue, 336 F.2d 277, 281 (C.A.4), cert. den. 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 795; Estate of Peyton v. Commissioner of Internal Revenue, 323 F.2d 438 (C.A.8); Estate of Faulkerson v. United States, 301 F.2d 231 (C.A.7), cert. denied, 371 U.S. 887, 83 S.Ct. 182, 9 L.Ed.2d 121.

The Government argues in this case that what is really presented here is an effort to employ a non-adversary Probate Court proceeding in order to achieve post-death estate tax planning. This court rejected a somewhat similar effort in Stark v. United States, 351 F.2d 160, 163 (C.A.6), cert. denied, 86 S.Ct. 1454, (U.S. May 17, 1966).

Accordingly we hold that the District Court was in error in ruling that it was conclusively bound by the determination of the Probate Court. Second National

Bank of New Haven v. United States, supra; Stark v. United States, supra; Estate of Pierpont v. Commissioner of Internal Revenue, supra; Estate of Peyton v. Commissioner of Internal Revenue, supra; Estate of Faulkerson v. United States, supra; Third National Bank & Trust Co. of Springfield v. United States, 228 F.2d 772 (C.A.1); Newman v. Commissioner of Internal Revenue, 222 F.2d 131, 136 (C.A.9); Channing v. Hassett, 200 F.2d 514, 518–519 (C.A.1); Loggie v. Thomas, 152 F.2d 636 (C.A.5); Sewell v. Commissioner of Internal Revenue, 151 F.2d 765 (C.A.5), cert. denied, 327 U.S. 783, 66 S.Ct. 683, 90 L.Ed. 1010, rehearing denied, 329 U.S. 819, 67 S.Ct. 26, 91 L.Ed. 697.

Three cases from this Circuit cited and relied upon by the District Court are distinguishable and are not relevant to the issue here presented: Cadden v. Welch, 298 F.2d 343 (C.A.6) (involving the amount of attorneys' fees allowed by a probate court); Estate of Goodwin v. Commissioner of Internal Revenue, 201 F.2d 576 (C.A.6) (involving determination of certain claims against the estate of the decedent); and Nashville Trust Co. v. Commissioner of Internal Revenue, 136 F.2d 148 (C.A.6) (involving the reasonableness of an award for services rendered to a decedent by distant relatives). The District Court also relied strongly upon Gallagher v. Smith, 223 F.2d 218 (C.A.3). To the extent that this decision may be construed as contrary to our holding on the effect of the decision of the Probate Court in the present case, we respectfully decline to follow it.

2) *Construction of Word "Estate" as Including or Excluding Non-Probate Trust Assets.*

Under Item V of the Will here involved, the testator devised and bequeathed to his wife forty per cent of "the rest, residue and remainder of *my estate* \* \* \* *of which* I shall *die seized* or *possessed'* or *to which I may be entitled* in any manner *at my death,* or *over which* I may have any *power of appointment."* (Emphasis supplied.)

Does the word "estate" as used in this item of the will refer only to the probate estate which passed under the will or does it also include the corpus of the inter vivos trust, as contended by the executors?

In construing this language of the will it is our duty to ascertain and apply the laws and policy of Michigan. Harrison v. Nixon, 9 Pet. (34 U.S.) 483, 503, 504, 9 L.Ed. 201; Piatt v. Gray, 321 F.2d 79, 82 (C.A.6); President & Fellows of Harvard College v. Jewett, 11 F.2d 119 (C.A.6); In re Sewart's Estate, 342 Mich. 491, 499, 70 N.W.2d 732, 52 A.L.R.2d 482. In Michigan the intention of the testator is the polestar in guiding the courts in the construction of wills. Mills v. Butler, 364 Mich. 422, 426, 110 N.W.2d 817; Dahlgren v. Pierce, 270 F. 507 (C.A.6), appeal dismissed, 256 U.S. 682, 41 S.Ct. 534, 65 L.Ed. 1170, cert. denied, 256 U.S. 692, 41 S.Ct. 534, 65 L.Ed. 1174.

An examination of the entire will, which is quoted in full in the opinion of the District Court (232 F.Supp. 970), discloses that it "bears the stamp of professional craftsmanship." Detroit Wabeek Bank & Trust Co. v. City of Adrian, 349 Mich. 136, 148, 84 N.W.2d 441, 448, quoting from In re Coots' Estate, 253 Mich. 208, 234 N.W. 141, cert. denied, Delbridge v. Oldfield, 284 U.S. 665, 52 S.Ct. 42, 76 L.Ed. 563. Since this will was drafted by an attorney, the word "estate" in Paragraph V will be given its "accustomed technical meaning according to common legal usage thereof." Saier v. Saier, 366 Mich. 515, 523, 115 N.W.2d 279, 283. "[I]t is generally true that terms are used in wills as they are used in other documents, with the meaning which has become generally accepted." Porter v. Porter, 50 Mich. 456, 460, 15 N.W. 550.

Page on Wills (Bowe-Parker Revision) Vol. 4, § 33.3 (1961) states the following rule concerning the construction of the word "estate" in a will:

"It has been held that a gift of 'my estate' prima facie means the property of which testator was absolute owner at his death, and does not include a trust fund which he had created during his lifetime and over which he had reserved a power of revocation * *. 'Estate' does not prima facie include property of which testator does not have the power of disposition by will."

In support of the last sentence of this quotation, Page cites In re McLennan's Estate, Appeal of McRae, 179 Mich. 595, 604–605, 146 N.W. 265, 268, in which the Supreme Court of Michigan said:

" 'Estate' is a word of varied meaning, according to the connection in which it is used.

\* \* \* \* \* \*

"Definitions alone do not furnish a construction of this will. Within the scope of possible meaning of the word, it must be determined from the context and surrounding circumstances what testator necessarily or naturally meant by his estate when preparing his will. It must be presumed that * * * he intended to include in his will only such property as was subject to his lawful distribution, and upon which the will would operate, and that, with such knowledge and purpose, he made the apportionment to those whom he selected as the objects of his bounty by testamentary gift.

\* \* \* \* \* \*

"We conclude that all reasonable presumptions sustain the proposition that testator, in the use of the word 'estate,' intended to confine that term to the property upon which his will could operate, and in relation to which it could and would speak."

In the present case the testator had no power of disposition by will over the assets of the inter vivos trust. He could not have amended the trust by will, and did not undertake to do so. Under no theory or circumstances could the trust assets have become a part of the probate "estate" in the hands of the executors nor could the disposition of the trust assets under the terms of the inter vivos trust have been changed by will.

Further, the words "my estate" appear some twenty times in the will, and when used elsewhere than in Paragraph V clearly refer to the probate estate. Unless the context requires a change in meaning, the term on repetition will be accorded the same construction throughout the will. Kemp v. Sutton, 233 Mich. 249, 256, 206 N.W. 366; Page on Wills, supra, Vol. 4, § 30.21.

In Paragraph V the testator not only repeated the term "my estate" as used throughout the will; he also qualified the term by three express provisions: he gave to his wife forty per cent of "my estate" (1) "of which I shall die seized or possessed," (2) or to which I may be "entitled in any manner at my death," or (3) "over which I may have any power of appointment." The testator did not "die seized or possessed" of the assets of the inter vivos trust; nor was he "entitled in any manner" to any part of the trust assets at the time of his death; nor did he have "any power of appointment" by will over the trust assets.

If the testator had intended to include the trust assets in the measure of the bequest to his wife under Paragraph V, he easily could have used language to that effect. Instead he did not make any reference whatever to the trust in his will or in either of the two codicils thereto. This court is not permitted by conjecture to read into the will language that the testator did not choose to use. LaMere v. Jackson, 288 Mich. 99, 103, 284 N.W. 659; Gardner v. City National Bank & Trust Co., 267 Mich. 270, 289, 255 N.W. 587; Kinney v. Kinney, 34 Mich. 250, 256.

We therefore conclude that, under Michigan law as pronounced by the Supreme Court of that State, the term "my estate" in Paragraph V refers only to probate assets and not to the assets of the inter vivos trust; and that for the purpose of measuring the marital deduction for federal estate tax purposes the surviving widow is entitled to forty per cent of only the probate assets under the terms of this Paragraph, and not to forty per cent of the assets of the inter vivos trust.

The parties stipulated in the District Court that if "the amount to be allowed as a marital deduction is $173,771.81, or some lesser amount, a judgment will be entered in favor of defendant, and this cause will be dismissed forthwith with prejudice."

The District Court already has determined that if the amount of the bequest is computed by reference to the probate assets alone, the sum passing to the widow under Paragraph V is $117,688.85. This finding is not disputed on appeal.

Reversed and dismissed.

FRANK W. WILSON, District Judge (concurring).

While I concur in the result reached by the majority, I must respectfully state an independent position upon the question of the effect to be given the adjudication of the Probate Court.

Whether or not the Probate Court had jurisdiction, and whether or not state court adjudications of property rights are generally binding under the Rules of Decisions Act (28 U.S.C. § 1652) upon federal courts in litigation of federal tax obligations, I would hold that this particular state court adjudication is not binding upon the District Court or upon this Court simply because of its collusive nature. By use of the word "collusive", it is not meant that the parties, their attorney or any other person was guilty of fraud or improper conduct. The word is used in the context of the problem as it has been used by the courts for many years, that is, to characterize those proceedings in which the motive of avoiding tax liability to the federal government so dominates over the usual interest of the parties in protecting their own interests in property as to overturn what would otherwise be the result of such litigation under applicable state law.

Some of the cases dealing with collusiveness in this context would seem to indicate that the mere lack of an adversary proceeding, of itself, is sufficient

to rob a state court adjudication of any binding character. See Estate of Stallworth v. C. I. R., (C.A.5, 1958) 260 F.2d 760; Wolfson v. Smyth, (C.A.9, 1955) 223 F.2d 111; Brodrick v. Moore, (C.A. 10, 1955) 226 F.2d 105. On the other hand, at least one of the cases in this area appears to hold that the "collusiveness" required must partake of fraud or other improper conduct. Gallagher v. Smith, (C.A.3, 1955) 223 F.2d 218.

I think the better view is expressed in that line of cases flowing from Freuler v. Helvering, (1934) 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634, and best represented by Faulkerson's Estate v. United States, (C.A.7, 1962) 301 F.2d 231; Peyton's Estate v. C. I. R., (C.A.8, 1963) 323 F.2d 438; and Estate of Pierpont v. C. I. R., (C.A.8, 1963) 336 F.2d 277. In *Freuler,* the Supreme Court spoke of "collusion" in this context "in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." See 54 S.Ct. 312, 78 L.Ed. 634. The Court in the Peyton case extracted from Saulsbury v. United States, (C.A.5, 1952) 199 F.2d 578, 580, language most apt here:

> "By the word *collusion,* we do not mean to imply fraudulent or improper conduct, but simply that all interested parties agreed to the order and that it was apparently to their advantage from a tax standpoint to do so. We mean that there was no genuine issue of law or fact as to the right of the beneficiary to receive this income, and no *bona fide* controversy between the trustee and the beneficiary as to property rights under the trust instrument. The order of the state court frustrated the plan of the donor * * *." (Emphasis theirs.)

In the instant case, the District Judge found no collusion, but he restricted unduly the meaning of "collusion", adopting the rationale of the *Gallagher* case and requiring evidence of fraud or other impropriety. See 232 F.Supp. 980, 981. In this respect, I think he erred and that the broader definition of "collusion", as hereinabove discussed, should have been applied.

Here waivers of notice and consent were filed on behalf of all parties, no hearing was had on the merits, one law firm represented all "adversaries" and the result reached was obviously contrary to Michigan law, though it would, if binding, have the effect of restricting the federal government's right to revenues. Both the *Faulkerson* and *Peyton* cases involved non-adversary proceedings with little or no hearing on the merits and in both instances the state court reached a result contrary to applicable state law. All these factors are proper as evidence of collusion.

I would hold that the proceedings in the Ottawa County Probate Court were collusive and thus not binding upon the District Court or this Court in the determination of federal tax liabilities.