In the Matter of the Estate of ISAAC GOLDOWITZ, Deceased.

Surrogate's Court, Kings County, October 20, 1932.

*Louis H. Cooke* for New York Life Insurance Company, for the respondent.

*Ezra B. Kotcher,* for the executrix.

*Alexander & Greene* [*Peter C. Mann* of counsel], for the Equitable Life Assurance Society of the United States.

*Jonas & Neuburger* [*Edmond Nathaniel Cahn* of counsel], for Manufacturers Trust Company, trustee, respondent.

*Irving W. Daitch,* special guardian.

WINGATE, S. The present discovery proceeding raises a number of interesting and rather novel questions of law, which are of particular timeliness owing to the increasing prevalence of the practice of attempting to substitute trusts *inter vivos* for testamentary dispositions of property.

On November 30, 1929, this decedent executed a rather elaborate deed of trust, by the terms of which he transferred to the trustees thereunder certain shares of corporate stock and four policies of insurance on his life in face value aggregating $27,000. The beneficiaries under the deed were numerous and included infants

and charities. The settlor provided that during his life he and his wife Sarah should be the trustees, but that upon his death the Manufacturers Trust Company, Canal and Broadway Branch, should become trustee in his "place and stead."

In the 32d paragraph of the agreement it was provided that the trust should be irrevocable except that the settlor reserved to himself the right to revoke or amend it, in whole or in part, "only upon strict conformity with the regulations for such amendment," etc., thereinafter set forth. These provided, in substance, that no revocation prior to January 1, 1931, nor subsequent to the 15th of January, 1931, should have any effect; that such revocation or amendment should be "in writing and duly witnessed and acknowledged;" and that, if properly executed, it should have no force until the 15th of February, 1931. It was further specified that notice of such revocation together with a copy thereof should be sent "by registered mail to all the trustees and Ezra B. Kotcher on or before the 31st of January, 1931," and that Kotcher, who was apparently the settlor's attorney, should determine whether the revocation was properly executed within the time limit, and whether or not the notice was given within the time provided, and, if his findings in this regard were in the affirmative, that he should communicate them within a reasonable time to the trustees who should thereupon return the principal fund to the settlor or otherwise conform to the amendments of the trust.

This instrument was duly executed and acknowledged by the settlor and was witnessed by three witnesses. An acceptance by the settlor and his wife, as trustees, was appended thereto.

Simultaneously with the execution of the trust deed, the settlor effected a change in the designated beneficiaries under the four policies of insurance which were included in the trust res. These had previously been payable to his wife as named beneficiary. The changes indorsed upon the New York Life policies were effected on February 11, 1930, the new payees being shown to be "Sarah Goldowitz, wife, and the Manufacturers Trust Company, Canal and Broadway Branch, as trustee in accordance with the terms of a deed of trust dated the 30th day of November, 1929." The beneficiaries under the two Equitable Life policies were similarly changed as of December 24, 1929, to "Sarah Goldowitz and Manufacturers Trust Company as trustees under a declaration of trust dated November 30, 1929."

Substantially simultaneously with the execution of this deed of trust, the testator executed a will which provided that all of his estate should be paid over to the trust, with the further pro-

vision that if for any reason it was disqualified from accepting, the entire estate should pass to his wife.

No notice of the execution of the trust deed was ever given to the Manufacturers Trust Company, and the testimony adduced on the hearing indicates that it had no knowledge thereof until some time after the death of the settlor.

It was shown by the testimony of Mr. Kotcher that between the 1st and 15th of January, 1931, the decedent called him on the telephone and stated that, by reason of financial reverses, he was unable longer to continue the trust, and desired to terminate it. He, therefore, requested the witness to prepare a revocation and mail it to him for execution, which he did. On January 10, 1931, an instrument was executed and acknowledged by the settlor reading as follows: " I, Isaac Goldowitz  *  *  *  do hereby revoke the Isaac Goldowitz trust heretofore made by me on the 30th day of November, 1929, and acknowledged by me on that day.

" I request that the trustees, being myself and my wife, return to me any and all property, policies of insurance, certificates of stock, and any other property which I have given to my trustees under the said trust indenture.

" This revocation shall take effect as of the 15th day of February, 1931.

" Dated January 10, 1931."

This instrument was acknowledged before a notary public in usual form on the day of its date. On the same day the settlor communicated the fact of his revocation of the trust to his wife and she assented thereto in writing.

The settlor never advised Mr. Kotcher nor the Manufacturers Trust Company of the revocation. He also failed to make any change in the beneficiaries under the insurance policies, wherefore, at the time of his death, and the maturing of liability thereunder, the named beneficiaries were in the trust form heretofore quoted.

The testator died on November 4, 1931, and his will was probated and letters testamentary issued in this court on the twenty-seventh of the same month. In this proceeding the widow-executrix seeks to recover from the insurance companies, for the benefit of the estate, the sums payable on these four policies as a result of the death of the decedent. The Manufacturers Trust Company and all beneficiaries under the deed of trust have been made parties to the proceeding.

Both the Manufacturers Trust Company and the special guardian for the infant beneficiaries, under the deed of trust, contend that the trust agreement is still in full force and effect, and that the acts performed by the settlor in January, 1931, in attempted revo-

cation of the indenture were wholly inadequate for that purpose. In support of this position a number of cases have been cited holding that where a particular mode of revocation thereof is prescribed in a trust deed, indicated procedure must be observed with meticulous strictness. Such was unquestionably the common law. An elaborate collection and review of the decisions on this subject may be found in *Hackley Union National Bank* v. *Farmer* (252 Mich. 674, at pp. 682 *et seq.*). Interesting as this delving into legal history unquestionably is, these cases possess only academic interest in the State of New York at the present time, since the entire question is now regulated by our statutes.

It is, of course, entirely obvious that a reservation of the power to revoke a trust, such as was inserted by the settlor in the trust indenture here under consideration, clearly falls within the definition of a power contained in section 131 of the Real Property Law, where it is described as " an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform." It has, of course, frequently been held that the provisions of this article relate to personal property as well as to realty. (*Matter of Cooksey*, 182 N. Y. 92, 97; *Matter of Moehring*, 154 id. 423, 427.)

The subject of the reservation of a power, and the applicability of the article thereto, is treated in section 144 of the Real Property Law, as follows:

" § 144. Reservation of a power. The grantor in a conveyance may reserve to himself any power, beneficial or in trust, which he might lawfully grant to another; and a power thus reserved shall be subject to the provisions of this article, in the same manner as if granted to another."

The later sections of the article prescribe definitely the limit of the requirements for a valid execution of such a power, those particularly pertinent in this connection being sections 165, 170 and 171. These respectively read as follows:

" § 165. How power must be executed. A power can be executed only by a written instrument, which would be sufficient to pass the estate, or interest, intended to pass under the power, if the person executing the power were the actual owner."

" § 170. When directions by grantor need not be followed. Where the grantor of a power has directed any formality to be observed in its execution, in addition to those which would be sufficient by law to pass the estate, the observance of such additional formality is not necessary to the valid execution of the power.

" § 171. Nominal conditions may be disregarded. Where the con-

ditions annexed to a power are merely nominal, and evince no intention of actual benefit to the party to whom, or in whose favor, they are to be performed, they may be wholly disregarded in the execution of the power."

The mere perusal of these enactments demonstrates that any requirement specified by the settlor in the trust deed to the contrary notwithstanding, the only act which the law required of him for a valid execution of his reserved power of revocation under the facts of this case, was that he unequivocally state in writing his intention to revoke, and that such statement be executed in the manner necessary for a conveyance, in other words, that it be duly signed and acknowledged. It follows, therefore, that the additional provisions contained in the deed of trust were mere surplusage, and that insistance upon them would be in direct violation of the terms of the statute.

Not only is it clear as a result of the statute that the settlor validly revoked the trust instrument by the document executed and acknowledged by him in January, 1931, but it seems probable that a like result must have been attained even under the common law. In any event his failure to notify the Manufacturers Trust Company of his act in this regard could not be considered as an invalidating omission. At the time the revoking act was performed, the Manufacturers Trust Company was not a trustee. According to the terms of the instrument it was named only as a successor-trustee. Its office was to take effect only upon the death of the settlor which had not then occurred, but further than this, even if it were to be granted that a construction of the terms of the deed required a holding that it was the intent of the settlor to constitute the Manufacturers Trust Company a trustee from the date of the execution of the instrument, nevertheless, on the date on which the act of revocation took place the company had never accepted the trust, for the obvious reason that it had never heard of it. It is fundamental that the mere naming of one as a trustee does not constitute him such until he accepts the appointment. (*Loughery* v. *Bright*, 267 Mass. 584, 588; *Cocks* v. *Barlow*, 5 Redf. 406, 411; *Green* v. *Green*, 4 id. 357, 359; *Stoehr* v. *Miller*, 296 Fed. 414, 425; *Sellers* v. *Rike*, 292 Ill. 468, 475.) Since, therefore, by reason of the failure of the Manufacturers Trust Company to accept the appointment as fiduciary, the only trustees then in office were the settlor and his wife, the precise terms of the trust instrument, of notification of " all trustees " in office met with compliance, and an acceptance by the trust company at a later date could not by relation back constitute it a trustee of the instru-

ment after it had been rendered null and void by the revocation.

The determination that the trust was validly revoked in January, 1931, carries with it a decision that the proceeds of all four insurance policies are properly the property of the estate. So far as the insurance companies are concerned, such proceeds are payable directly to Sarah Goldowitz and the Manufacturers Trust Company. Both of these named beneficiaries are in being and capable of taking. The addition of the words " as trustees under a declaration of trust dated November 30, 1929," are simply *descriptio personarum* with which the insurance companies have nothing whatsoever to do. Since, however, as between the estate on the one hand, and Sarah Goldowitz and the Manufacturers Trust Company, on the other, there is a complete failure of the trust by reason of its revocation, the latter two must be held trustees of a resulting trust for the benefit of the estate.

A particularly apposite decision in this connection was recently made by the New Jersey Chancery Court in *Prudential Insurance Co.* v. *Bloomfield Trust Co.* (104 N. J. Eq. 372). The facts of this case show that the deceased was insured under a policy with the Prudential Company, the loss on which was payable to his wife. He thereupon changed the beneficiary to the Bloomfield Trust Company as " beneficiary trustee." The terms of this trust were not ascertainable and the court, in directing the proceeds of the policy to be paid on his death to the executor of his estate, said (at p. 373): " The widow's contention is that the substitution of the trust company as trustee beneficiary, without more, did not work a change of beneficiaries, and that unless the attending circumstances clearly manifest a declaration by the insured of the objects of the trust or definitely reveal the *cestuis*, the trust is imperfect and she is not divested of her rights under the policy, and quotes from Story Eq. Jur. § 979a.

" ' If * * * a trust be clearly created in a party, but the terms by which it is created are so vague and indefinite that courts of equity cannot clearly ascertain either its objects or the persons who are to take, then the trust will be held entirely to fail.'

" With this proposition of law there is no disagreement. The trust fails, not the trustee's title. The power reserved to the insured was effectively exercised in favor of the trustee. That the trust was not declared is no concern of the wife. The designation of the wife as beneficiary was revoked and her rights in the policy were lost to her when the insured exercised the power and by the prescribed method made it payable to the trust company as trustee. The transfer was complete and the wife's interest at an end and the right of beneficiary passed to the trustee though

the trust upon which the trust company held was deficient. Upon an imperfect trust the law raises a resulting trust. Low. Trusts (11th ed.) 164."

That the law of New York is in conformity with this pronouncement is indicated by the decision of the Court of Appeals in *Bailey* v. *Buffalo Loan Trust & Safe Deposit Co.* (213 N. Y. 525, 540).

In conclusion, there remains for notice merely the extremely anachronistic contention of the Equitable Insurance Company to the effect that this court has no jurisdiction to direct its payment of the fund here in question. Such contention might have been a correct statement of the law prior to the year 1914, but certainly it has not been such since that date. (*Matter of Morris*, 134 Misc. 374; *Matter of Kirkman*, 143 id. 342, 349; *Matter of Welton*, 141 id. 674; *Matter of Dickman*, 142 id. 207, 210, and cases cited.)

It is, therefore, determined that the estate of this decedent is entitled to receive the proceeds of the four insurance policies, together with the shares of stock of the Gibraltar Credit Corporation specified in the order to show cause herein dated February 3, 1932. In view of the fact that all of the parties interested are now before the court, the order will direct the respective insurance companies to pay over the proceeds of the policies direct to the estate instead of adopting the roundabout proceeding of payment by the insurance companies to the trustees and their payment over to the estate.

Proceed accordingly.