In the Matter of the Application of THE PEOPLE OF THE STATE OF NEW YORK, by GEORGE S. VAN SCHAICK, as Superintendent of Insurance of the State of New York, for an Order to Take Possession of the Property and Rehabilitate the NEW YORK TITLE AND MORTGAGE COMPANY.

Supreme Court, New York County, February 2, 1934.

*Edward Endelman*, for the petitioner for the motion.

*Greenbaum, Wolff & Ernst* [*Lawrence S. Greenbaum* and *Newman Levy* of counsel], for the Superintendent of Insurance.

FRANKENTHALER, J. This is an application by the holder of a guaranteed mortgage certificate, issued by the New York Title and Mortgage Company, for the appointment of a commission to make a general survey and study of the guaranteed mortgage situation for the purpose of reporting and recommending to the court a plan or plans calculated to aid and benefit the holders of guaranteed mortgage certificates.

Even if it be assumed that the court has the power to grant an application of this character, there appears to be no occasion, at this time, for its exercise in view of the fact that the inquiry now being conducted by the Moreland Commissioner appointed by the Governor has for one of its purposes the suggestion and recommendation of measures designed to relieve the distress of certificate holders and to solve the problems confronting them. Although the application should, therefore, be denied, the court believes it to be its duty to express briefly its views as to the remedies open to certificate holders under present conditions. This course appears to be particularly necessary to prevent an impression from arising among the certificate holders that the court's recent holding that the Schackno Act (Laws of 1933, chap. 745) is unconstitutional (*Matter of New York Title & Mortgage Co.*, 150 Misc. 467)* leaves them without remedy.

In all the cases which have hitherto come to the court's attention the rights conferred upon the guaranty companies in respect to the administration, enforcement and foreclosure of the bonds and mortgages covered by their guaranties have constituted " special powers in trust." The forms involved in those cases have been those commonly used by the guaranty companies and, therefore, present instances typical of the situation which prevails generally. Of course, the rights differ somewhat in the case of each guaranty company as well as in respect to the various issues of each company, for they are governed by the documents involved. In every case that the court is aware of, however, the guaranty company possesses authority to collect the principal and interest upon and enforce all the terms and provisions of the bond and mortgage, as well as to satisfy and discharge the mortgage in its own name. In some cases additional rights have been conferred, *e. g.*, to extend the bond and mortgage in the name of the guaranty company. These rights constitute " powers " within the meaning of section 131 of the Real Property Law, which defines a power as " an authority to do an act in relation to real property, or to the creation or revocation of an estate therein, or a charge thereon, which the owner, granting or reserving the power, might himself lawfully perform." They are " special powers in trust " under section 138 of the Real Property Law, which provide that " a special power is in trust, where * * * 2. A person or class of persons, other than the grantee, is designated as entitled to any benefit, from the disposition or charge authorized by the power." It is not necessary to constitute a special power in trust under subdivision 2 (*supra*) that the grantee of the power should be entitled to no benefit from its exercise. It is sufficient that a person or persons other than the grantee be

---

* Revd., 264 N. Y. 475.

entitled to some (" any ") benefit. The benefit may be shared by the grantee and others. It is only where the benefit is solely for the grantee that the power is a beneficial power rather than a power in trust. (Real Prop. Law, § 136; see Chaplin Express Trusts & Powers [1897 ed.], § 545.) The provisions of article 5 of the Real Property Law relating to powers apply also to powers relating to personal property. (*Matter of Cooksey*, 182 N. Y. 92, affg. 100 App. Div. 516; *Matter of Moehring*, 154 N. Y. 423, affg. 19 App. Div. 629; *Matter of Wilkin*, 90 id. 324; *Ward* v. *Stanard*, 82 id. 386.) In some instances the powers have been granted to the guaranty companies by the terms of the guaranties, and in others they have been reserved by the companies to themselves, as they may be under section 144 of the Real Property Law. In either event, the guaranty company is the " grantee " of the powers. (Real Prop. Law, § 132.)

The provisions of section 112 of the Real Property Law relating to the power of the Supreme Court to accept the resignation of trustees and to remove them, as well as to appoint new trustees, are expressly extended by section 182 of the Real Property Law to cover powers in trust. Section 182 reads as follows: " Sections applicable to trust powers. Sections one hundred and eleven to one hundred and thirteen of this chapter, both inclusive, in relation to express trust estates, and the trustee thereof, apply equally to trust powers, however created, and to the grantees of such powers."

Section 112 provides: " The supreme court has power, subject to the regulations established for the purpose in the general rules of practice:

" 1. On his application by petition or action, to accept the resignation of a trustee, and to discharge him from the trust on such terms as are just.

" 2. In an action brought, or on a petition presented, by any person interested in the trust, to remove a trustee who has violated or threatens to violate his trust, or who is insolvent, or whose insolvency is apprehended, or who for any other cause shall be deemed to be an unsuitable person to execute the trust.

" 3. In case of the resignation or removal of a trustee, to appoint a new trustee in his place, and in the meantime, if there is no acting trustee, to cause the trust to be executed by a receiver or other officer under its direction. This section shall not apply to a trust arising or resulting by implication of law, nor where other provision is specially made by law, for the resignation or removal of a trustee or the appointment of a new trustee."

In the court's opinion, subdivision 2 of section 112 (*supra*) furnishes statutory authority for the removal of at least some of

the guaranty companies from their present position as grantees of special powers in trust and for the appointment of new trustees in their places. The words " who is insolvent, or whose insolvency is apprehended, or who for any other cause shall be deemed to be an unsuitable person to execute the trust " (Subd. 2), appear to be directly applicable. The argument that section 3 of the Schackno Act appoints the Superintendent of Insurance as substituted trustee and, therefore, constitutes " other provision * * * specially made by law, for * * * the appointment of a new trustee " within the meaning of the last sentence of subdivision 3 of section 112 of the Real Property Law (*supra*) is without merit. Section 3 of the Schackno Act, to the extent that it is constitutional, was intended merely to confer upon the Superintendent of Insurance the right to conduct the business of the guaranty companies and exercise all their functions. It reveals no ev.dence of any desire on the part of the Legislature to appoint the Superintendent as a substituted trustee. This becomes apparent when it is borne in mind that the guaranty companies have not resigned as trustees nor have they been removed either by the courts or by the Legislature. The section applies to companies which have not been taken over by the Superintendent for purposes of rehabilitation or liquidation as well as to those which have. Even as to companies in rehabilitation, if they should emerge therefrom and resume their business they would be entitled to assume the trust powers once more. If the view were taken that section 3 appoints the Superintendent as substituted trustee of the powers in trust held by the various guaranty companies, he would occupy the anomalous position of being a temporary substituted trustee. Moreover, even if section 3 were construed as providing for the removal of the guaranty companies as trustees and for the appointment of the Superintendent of Insurance as substituted trustee, it would probably be unconstitutional as an attempt to deprive the Supreme Court of its ancient jurisdiction over trusts, including the removal of trustees and the appointment of their successors. (See State Const. art. 6, § 1.)

A committee of prominent attorneys which has examined into the guaranteed mortgage situation has submitted a report stating that " We think that under the form commonly in use valid powers in trust were held by the various guaranty companies. * * * We have had occasion to observe one certificate of a certain company governing a group issue that we think creates a trust in property rather than a power in trust. * * * We think that the resignation or removal of a trustee of such powers in trust and the appointment of a successor was intended to be and is at present

the subject of the jurisdiction of the Supreme Court as prescribed in section 112 of the Real Property Law which is expressly extended to trustees of powers by section 182 thereof.  *  *  *  We do not think that the Legislature intended, when it gave the Superintendent the authority found in the Schackno Act, to impair either the inherent power of the Supreme Court or the statutory power granted under section 112 of the Real Property Law to appoint successor trustees."

Trustees appointed by this court in the place of guaranty companies would possess the powers in trust now held by the guaranty companies and/or by the Superintendent of Insurance.  They would have the right to collect principal and interest upon the bonds and mortgages covered by the guarantees and owned by the certificate holders.  They would have the right to enforce compliance with all the other provisions of the bonds and mortgages; to withhold foreclosure action when advisable and to foreclose when necessary.  In cases where the guaranty companies possess the right to extend bonds and mortgages the trustees would have the same right.  As previously observed, the powers of the trustees in a given case would ordinarily depend upon the terms of the instruments conferring various powers upon their predecessors, the guaranty companies.

Although possessed of the powers of the guaranty companies, the trustees would at all times be subject to the direct supervision and control of the Supreme Court by reason of that court's well established jurisdiction over trusts and trustees.  The trustees would at all times be accountable for their acts.  Certificate holders aggrieved by the actions or failure to act of their trustees would be entitled to require the latter to justify their conduct before the court and to account.  In this respect the certificate holders, if trustees should be appointed, would possess much greater rights than they had during the exercise of the powers in trust by the guaranty companies and than they have now while those powers are exercised by the Superintendent of Insurance.

The character of the trustees would, of course, have to be of the very highest.  The condition of suffering and distress which prevails today in the case of hundreds of thousands of certificate holders demands that only individuals and institutions of exceptional character and ability should be selected by the court as trustees.  The work should be regarded as a public service and the fees of the trustees should be limited accordingly.  A waiver of statutory commissions should be exacted as a condition of the appointment of any trustee and compensation should be fixed only after the rendering of services and upon the basis of the services rendered.

The amount of compensation awarded by the court would, of course, be reviewable by our appellate courts.

No trustee would, as a rule, be appointed except upon notice to all certificate holders. Every effort would be made upon the return day of an application for the appointment of a trustee for any particular issue to bring about an agreement by all the certificate holders of that issue upon some plan or course of action which would make it unnecessary for the court to select a trustee. Where all the certificate holders of a given issue are in agreement their wishes would control, for the bonds and mortgages belong to them. Even where it proves impossible to obtain unanimous action by certificate holders and the appointment of a trustee becomes necessary, the choice of the trustee would, wherever possible, be left to the suggestion of the great majority of the certificate holders. Trustees of the court's own selection would be designated only as a last resort.

*It would be erroneous to assume that as many trustees would be appointed as there are bonds and mortgages owned by certificate holders.* In a vast number of cases involving mortgages of comparatively small amounts and few certificate holders the unanimous agreement of the latter upon some course of action would be almost certain to be achieved, especially with the aid of the court. In a great many other instances where entire unanimity could not be attained the trustees appointed by the court would be those chosen by the certificate holders themselves. The number of occasions requiring the designation of trustees of the court's own selection would be small compared to the number of mortgages against which certificates are outstanding. Even in such cases there would be no need for appointing as many trustees as there are bonds and mortgages. In some cases, it is true, the amount of the mortgage and the character of the mortgaged premises might be such that one trustee or set of trustees would have all that he or it could do to manage the mortgage or the property. In numerous other instances, however, one trustee or set of trustees would undoubtedly find it possible to manage and supervise a number of mortgages or properties.

No more trustees would be appointed than would be absolutely necessary to insure the proper and efficient administration of the bonds, mortgages and properties, and close and direct supervision thereof. The trustees would continue to administer and enforce the bonds and mortgages and to manage the mortgaged premises only until the payment of the mortgages or until such time as the certificate holders could agree among themselves upon some other method of handling the situation. Economical and efficient man-

agement by the trustees until returning real estate values restore equities and make it possible to cure defaults and comply with the mortgages will do a great deal to improve present conditions.

Suggestions have been made that new legislation be enacted creating a so-called " mortgage authority " to which the duties and powers now exercised by the Superintendent of Insurance in respect to the mortgages against which guaranteed certificates have been issued would be transferred. Such legislation would be of little value. Instead of curing the evil inherent in the present handling of the situation by the Insurance Department it would tend to perpetuate that evil. *The legislation would merely create another Insurance Department under a different name.* The many thousands of guaranteed mortgages against which certificates have been issued would still continue to be run by a single administrative department of the State. *It would be impossible, under such a system, to give to the bonds and mortgages and the underlying properties the close individual attention and supervision which alone constitutes the salvation of the certificate holders.* This is true whether the mortgage authority is a corporation or an individual or a group of individuals. No administrative department of the State can cope properly with the task of managing efficiently and economically thousands of mortgages and parcels of real estate. This is so not merely because of the impossibility of proper supervision but also because of the fact that management by those having no stake in the result will not, in the very nature of things, produce the results which are possible through management by those having a vital interest in the results. The certificate holders, however, would possess such a direct interest in the results of the trustees' management and they would constantly be in a position to invoke the court's supervisory power over trustees. In this way the certificate holders would possess a control and supervision over the management of the mortgages and properties by the trustees which would be lacking if their bonds, mortgages and underlying properties were to be administered and managed by an administrative State department not subject to the control and regulation of the court to nearly the same extent as the trustees would be. Any one familiar with the conditions which have existed and which continue to exist while the Insurance Department is attempting to handle the guaranteed mortgage situation cannot greet with enthusiasm the suggestion that the situation be remedied through the setting up of another Insurance Department under a different title. This is well pointed out by Mr. Samuel Untermyer, in a statement presented to the court at a hearing on January 31, 1934: " It was

absurd of the Superintendent of Insurance to imagine that he or any other official could adequately protect the tens of thousands of certificate holders interested in these many hundreds of pieces of property, even if he were a superman, and even though he were represented by the most capable and extensive law firms and organizations anywhere to be found. The representation of one of these series of certificates and the underlying mortgages in these times of stress, when they require the most intensive attention, would tax the capacity of the largest law firm, to say nothing of an organization the size of that maintained by the Superintendent of Insurance, and with the best of intentions the certificate holders could not get the protection to which they are entitled."

It may be urged that the policy of this State for about a quarter of a century has been to administer the assets of insolvent insurance companies and banks, in the process of liquidation, through a State administrative department, and that the appointment of trustees in the present situation would run contrary to that policy. There are several answers. In the first place, no liquidation of any insurer or any bank has ever presented a problem as vast, complex and intricate as that presented by the present guaranteed mortgage situation, which requires the efficient and economical management of thousands of mortgages and parcels of real estate, large as well as small, at a time when the most expert handling of each mortgage and property is imperatively necessary in the interest of hundreds of thousands of holders of guaranteed mortgage certificates. In the second place, the policy of the State, previously referred to, has been applied only to the administration of assets belonging to the insurance companies and banks as distinguished from property belonging to others held by the insurance companies or banks as a fiduciary or agent. It is clear that all the certificate holders of a given issue, acting together by unanimous agreement, can compel the Superintendent of Insurance to turn over to them the bonds, mortgages and other collateral now in the hands of the guaranty company (provided, of course, that the guaranty company is in default upon its guaranty). This emphasizes the fact that the Superintendent of Insurance is in charge of such bonds, mortgages and other collateral only because of the inability of the certificate holders interested therein to come together and agree upon taking the bonds, mortgages and other collateral from the Superintendent's possession. It is one thing for the Insurance Department to administer the assets of an insurance company. It is quite another thing for the Insurance Department to attempt to administer the property of others which the insurance company

holds as a mere fiduciary, agent or bailee, as the case may be. In the case of the administration of the general assets of an insurance company the choice of administrator could only lie between one appointed by the court for all the assets on the one hand, and the Superintendent of Insurance or some other administrative official on the other hand. No subdivision of the general assets between a number of designees of the court would be possible in such a case. The instant situation, however, is entirely different, for the bonds, mortgages and other collateral belonging to others permit of separation and segregation into as many parts as there are distinct issues. Thirdly, no question of legislative interference with the inherent equity power of the Supreme Court over trusts was involved in connection with the legislation for the rehabilitation or liquidation of the assets of insurance companies or banks. Such a question is presented here by reason of the fact that the guaranty companies, as previously pointed out, are grantees of special powers in trust over which this court has exercised inherent jurisdiction over a long period of time.

The court is of the opinion that the appointment of trustees in the manner and with the restrictions previously indicated represents the best solution of the present problem which is legally possible. The court believes that the appointment of trustees would do a great deal to remedy present conditions. The certificate holders would at all times, upon reaching a unanimous agreement on any course of action, be able to take the situation out of the hands of the trustees and of the court unto themselves. In the interim their bonds and mortgages and the underlying properties would be efficiently and economically managed by a limited number of trustees appointed by the court and subject to the supervisory powers of the court which may be called into action at any time and by any certificate holder.

The motion is denied.