COMMISSIONER OF INTERNAL REV-
ENUE, Petitioner,

v.

ESTATE of Herman J. BOSCH, Deceased,
Irving Trust Company, Executor,
Respondent.

No. 306, Docket 29883.

United States Court of Appeals
Second Circuit.

Argued May 25, 1966.

Decided July 6, 1966.

Friendly, Circuit Judge, dissented.

Benjamin M. Parker, Atty., for the
Dept. of Justice, Washington, D. C.
(Mitchell Rogovin, Asst. Atty. Gen., Rich-
ard M. Roberts, Acting Asst. Atty. Gen.,
Lee A. Jackson and Robert N. Anderson,
Attys., Washington, D. C., on the brief),
for petitioner.

John W. Burke, New York City (John
A. Clark, Dermod Ives and Davies, Hardy
& Schenck, New York City, of counsel),
for respondent.

Before FRIENDLY, HAYS and
FEINBERG, Circuit Judges.

HAYS, Circuit Judge.

The Commissioner petitions for review
of a decision of the Tax Court which
held that the Commissioner had errone-
ously disallowed the sum of $70,222.04
as a marital deduction under Section
2056(b) (5) of the Internal Revenue
Code of 1954, 26 U.S.C. § 2056(b) (5).[1]
We affirm the Tax Court.

---

1. "(5) *Life estate with power of appoint-*
*ment in surviving spouse.*—In the case of
an interest in property passing from the
decedent, if his surviving spouse is en-
titled for life to all the income from the
entire interest, * * * with power in
the surviving spouse to appoint the entire
interest, * * * (exercisable in favor
of such surviving spouse, or of the estate
of such surviving spouse, or in favor of
either, whether or not in each case the
power is exercisable in favor of others),

and with no power in any other person to
appoint any part of the interest, or such
specific portion, to any person other than
the surviving spouse—

(A) the interest * * * thereof so
passing shall, for purposes of subsec-
tion (a), be considered as passing to the
surviving spouse, and

(B) no part of the interest so passing
shall, for purposes of paragraph (1)
(A), be considered as passing to any
person other than the surviving spouse.

The facts are fairly simple and are not in dispute.

On April 9, 1930 the decedent set up a trust by the terms of which the income was to be paid to his wife during her lifetime. Upon the death of the wife the corpus was to be paid to the grantor or his estate. The trust was amendable and revocable.

On February 6, 1931 decedent amended the trust instrument to grant to his wife a general power of appointment. She was empowered to appoint by her will the corpus of the trust to any "persons and/or corporations." The amendment provided for a disposition over in the event the wife failed to exercise her power of appointment.

On October 25, 1951, the wife executed a document by which she purported to release a portion of her general power of appointment under the trust and to convert it into a special power of appointment.[2]

It appears from the document itself and it is readily conceded by the trustee,

which proposed to Mr. and Mrs. Bosch the execution of the release, that the purpose of the release was to take advantage of the Powers of Appointment Act of 1951, Ch. 165, 65 Stat. 91, amending Int. Rev. Code of 1939, § 811(f) (now Int. Rev. Code of 1954, § 2041), then recently enacted, and thus "to prevent the assets of the trust being taxed as part of Margaret Bosch's estate."

On April 6, 1957 Herman Bosch died. His executor claimed a marital deduction for the value of the trust. The Commissioner determined that the trust did not qualify for the marital deduction and asserted a federal tax deficiency based upon the disallowances of the amount of $70,-222.04, the value of the corpus of the trust.

The executor filed a petition in the Tax Court for a redetermination of the deficiency. While the action was pending in the Tax Court, the trustee, which was also executor of the estate of Herman Bosch, brought a proceeding in the New York Supreme Court for a settlement of

---

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events."

2. "Know All Men by These Presents:

Whereas I, Margaret Bosch, am the life beneficiary of the trust created by a certain Agreement of Trust dated April 9, 1930 between Herman J. Bosch, as Grantor, and Irving Trust Company, as Trustee, which trust is now being administered by said Irving Trust Company as such Trustee; and

Whereas, by an amendment of said Agreement of Trust, dated February 6, 1931, made by said Grantor pursuant to the power thereby preserved to him, it is provided that in the event that said Grantor shall not survive me, the beneficiary therein named—

'then upon the death of said Margaret Bosch the Trustee shall pay, transfer and deliver the principal of the trust fund to the persons and/or corporations appointed to receive the same by the Last Will and Testament of Said Margaret Bosch, * * *'
and

Whereas I desire to release in part my contingent power of appointment under said Agreement of Trust in the manner contemplated by the 'Powers of Appointment Act of 1951' amending Section 811 (f) and Section 1000(c) of the Internal Revenue Code of the United States of America, so that my said contingent power of appointment under said Agreement of Trust shall not be a general power of appointment,

Now, Therefore, I, said Margaret Bosch, hereby renounce, relinquish, surrender and release my said contingent power to appoint all or any part of said trust fund by said Agreement of Trust dated April 9, 1930 made by Herman J. Bosch, as amended by instrument dated February 6, 1931, or any property which may hereafter form a part of said trust fund, in favor of myself, my estate, my creditors or the creditors of my estate.

Any attempted exercise of said power made by my Will which is inconsistent or in any way in conflict with this release and limitation by me of said power shall be void.

In Witness Whereof, I have executed this instrument in duplicate this 25 day of October, 1951.

/s/ Margaret Bosch (L.S.)
Margaret Bosch"

its account as trustee. In connection with the proceeding in the New York Supreme Court, the trustee asked for a determination of the validity of Mrs. Bosch's release of part of her power of appointment. Respondent stipulated and conceded that the New York proceeding was instituted "at least in part for the purpose of affecting [the] outcome of the case before the Tax Court. The trustee's petition in the New York court described the proceedings then pending in the Tax Court, and stated the position taken in that proceeding by the executor.

The issue in the state proceeding was whether the release executed by Mrs. Bosch on October 25, 1951 was effective. Three briefs were filed in the New York

proceeding, one for Mrs. Bosch, one for the trustee, and one by a guardian *ad litem* in behalf of a minor interested in the trust by reason of being a possible beneficiary in the event Mrs. Bosch died without exercising her power of appointment. All three briefs argued that the release was a nullity. No argument for the validity of the release was presented to the court.

There were twenty-two persons having the same interest as the infant who was represented by the guardian *ad litem*. Although they received notice of the proceeding, none of them appeared.

The state court held that Mrs. Bosch's purported release was a nullity.[3]

3. "Matter of Irving Trust Co. (Bosch)— In this proceeding to judicially settle and allow the intermediate account of the trustee under an inter vivos trust, a ruling is requested respecting the validity of an instrument executed by Margaret Bosch, wife of the settlor of the trust, dated October 25, 1951, purportedly partially releasing her contingent power of appointment. On April 9, 1930, Herman J. Bosch created a trust which provided for the payment of income to his wife for her life with a reversion to the grantor if his wife should predecease him, or to his estate if he should predecease his wife, leaving a will, or to his next of kin if he should die intestate. The trust instrument reserved to the grantor the right to alter or amend the trust at any time during his life with the consent of the trustee, and the further right without the consent of the trustee or any other person to revoke the trust in whole or in part. On February 6, 1931, the grantor exercised his right to amend the trust to provide that his wife, Margaret Bosch, should have a general power of appointment over the property of the trust *exercisable by Will* if she survived the grantor. The power in the grantor to further alter, amend or revoke the trust in his lifetime was undisturbed by this amendment. On October 25, 1951, during the lifetime of the grantor, his wife, Margaret Bosch, executed an instrument by which she purported to effect a partial release of the general power of appointment granted to her by the trust instrument as amended. The grantor, Herman Bosch, died on April 6, 1957. The applicable provision of the law is section 183, subdivision 1, of the Real Property Law

[McKinney's Consol.Laws, c. 50], which stated: 'Any power which is exercisable by deed, by will, by deed or will, or otherwise, whether general or special, other than a power in trust which is imperative, is releasable, either with or without consideration, by written instrument signed by the grantee and delivered as hereinafter provided.' This section, although a part of the Real Property Law, applies to powers of appointment over personal property as well as to powers over real property (Matter of N. Y. Title & Mortgage Co., 150 Misc. 488 [270 N.Y.S. 473]; In re Goldwitz Will, 145 Misc. 300 [259 N.Y.S. 900]; Matter of Cooksey's Estate, 182 N.Y. 92 [74 N.E. 880]). In order that the donee of a power of appointment release any rights under that power, the donee must have the right to exercise the power at the time the purported release is made. It seems clear that the donee of power of appointment cannot exercise it prior to its creation (Matter of Piffard, 111 N.Y. 410 [18 N.E. 718, 2 L.R.A. 193]). In the instant case, Margaret Bosch, on October 25, 1951, sought to effect a partial release of the power of appointment over the property of the trust. At that time she lacked the power to exercise any rights under the trust instrument. Her power with respect to the trust instrument came into being upon the death of the grantor on April 6, 1957. A power of appointment created under a revocable deed of trust, which power shall be exercised by will, may not be exercised while the settlor of the trust is still alive. Since she could not have exercised the power of appointment on October 25, 1951, she could not have effected a valid partial release of the power on that date.

The Tax Court decided to accept the New York decision and gave the following reasons for doing so:

1. The New York court had jurisdiction over the parties and subject matter of the proceeding, and its judgment was final and conclusive as to those parties. Therefore, Mrs. Bosch now has a general power of appointment which she could exercise in favor of herself, her estate, her creditors, or the creditors of her estate.

2. Decisions of the Supreme Court of the State of New York represent legal precedent for courts throughout the state, unlike decisions of local courts with limited geographical jurisdiction whose decisions are not binding upon other courts of the state.

3. The Commissioner was fully aware of the proceeding in the New York court and could have sought the opportunity to present his views to that court. Indeed, he agreed to the continuance of the hearing before the Tax Court so that the New York proceeding might be brought to a conclusion.

4. The New York court rendered a reasoned opinion and reached a deliberate conclusion.

5. The New York court's decision, which is binding upon Mrs. Bosch, may have certain offsetting tax consequences in respect to her own estate tax. The New York decree establishing that she has a general power of appointment will result in the inclusion in her gross estate of any property passing under her exercise of that power, and the record indicates that it is not reasonable to assume that this power of appointment will remain unexercised.*

\* The Tax Court said "[W]e cannot reasonably assume that she will permit that power to remain unexercised, for there are indications in the record that the immediate natural objects of her bounty do not include all of the many relatives of her husband who would take in default of her exercise of the power."

cree was more than "a label for past events that would affect the present litigation; it authoritatively determined the nature of the power of appointment with potentially adverse tax consequences at a later date."

The Tax Court stated that it was not necessary for it to say that it was "bound" by the New York decision. It held that it was sufficient to state, for all of the above reasons, that it would accept the New York decision "as an authoritative exposition of New York law and adjudication of the property rights involved."

■■ In deciding whether the Tax Court ascribed proper effect to the state decision, a few preliminary observations may be helpful. We believe that much of the confusion in the cases is caused by the failure of the courts carefully to formulate the issue. For example, it is quite clear that the state decision is not binding upon the federal courts because the situation is covered by the principle of *res judicata*. See Freuler v. Helvering, 291 U.S. 35, 43, 54 S.Ct. 308, 78 L.Ed. 634 (1934). Obviously the Commissioner is not bound by the state decision in a *res judicata* sense, since he was not a party to the litigation which resulted in the decision. It may be that it would be desirable to hold the Commissioner bound when he has received notice and an opportunity to appear as in this case, but that is clearly not the law now, and any such change in the law would

Hence her purported partial release of the power of appointment on October 25, 1951, was a nullity (Matter of Piffard, supra). Accordingly, the purported partial release by Margaret Bosch on October

25, 1951, of the power of appointment granted to her by the trust instrument was a nullity. Settle order." N. Y. L. J., November 15, 1963.

no doubt require legislative action. Similarly the federal courts are not bound in this situation by the rule of Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). It is for this reason that most of the Commissioner's argument must be considered to be beside the point. The task here is not to discover the general New York law applicable to releases of powers of appointment. That may well be the subject of the required search in a case which concerns a taxpayer whose own special status under New York law has never been authoritatively determined by a New York tribunal. In the determination of the present case we are not required to take issue with our learned colleague, Judge Friendly, whose brilliant lecture In Praise of Erie—And of the New Federal Common Law, 39 N.Y.U.L.Rev. 383 (1964) is quoted in the Commissioner's Reply Brief. We may indeed agree with him that the correct view, that "the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law," is set forth by Judge Waterman in Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 541 n. 1 (2d Cir. 1956). The reference in the quoted passage is to the great run of cases in which the federal courts are obliged to search out the general principle of state law in order to apply that principle to a case under consideration. It does not refer, and was never intended to refer, to the question of whether or not a federal court is to accept a state determination of the rights under state law of a party to a federal action. In the latter situation, which is that in the case at bar, the party comes into the federal court with his rights already fixed by a decision of a state tribunal. There is no occasion to inquire into the general law of the state to ascertain what those rights are.

The issue is, then, strictly speaking, not whether the federal court is "bound by" the decision of the state tribunal, but whether or not a state tribunal has authoritatively determined the rights under state law of a party to the federal action.

This is clearly the effect of Sharp v. Commissioner, 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed. 1087 (1938), reversing, 91 F.2d 802 (3d Cir. 1937), Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937) and Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634 (1934). In the *Blair* case, the issue was whether a certain trust was a spendthrift trust under the law of Illinois. The Circuit Court of Appeals, examining the general law of Illinois on the subject, held it to be a spendthrift trust. The trustees thereupon brought an action in the Illinois courts to obtain a construction of the will and the Appellate Court of Illinois, an intermediate appellate court, held that the trust was not a spendthrift trust. The United States Supreme Court ruled that the Commissioner was required to accept the Illinois decision as dispositive. The Court said:

> "In this instance, it is not necessary to go beyond the obvious point that the decision was in a suit between the trustees and the beneficiary and his assignees, and the decree which was entered in pursuance of the decision determined as between these parties the validity of the particular assignments." 300 U.S. at 10, 57 S.Ct. at 332.

In deciding whether the determination of the rights under state law of a party to a federal action has been authoritative, the majority of federal courts in which the question has been raised have refused to accept the result in cases which were non-adversary.[4] However, there is

4. See the discussion and the cases cited in the following:
10 Mertens, Law of Federal Income Taxation, Ch. 61 (Zimet Revision 1964); Braverman and Gerson, The Conclusiveness of State Court Decrees in Federal Tax Litigation, 17 Tax L. Rev. 545 (1962); Colowick, The Binding Effect of a State Court's Decision in a Subsequent Federal Income Tax Case, 12 Tax L.Rev. 213 (1957); Holzman, Impact of State Law upon Fed. Tax., 42 Taxes 240 (1964); Sacks, Binding Effect of Nontax Liti-

very respectable authority for the proposition that, if the state decision is binding on the parties as to their rights under state law (as it would not be if it resulted from fraud or collusion), it is conclusive as to those rights for purposes of federal taxation. In Gallagher v. Smith, 223 F.2d 218, 223 (3d Cir. 1955), the court said:

"An adjudication of such a question of title by a court of the state must accordingly be given effect, not because it is res judicata against the United States, but because it is conclusive of the parties' property rights which alone are to be taxed. So far as those parties are concerned the law of the state is what the state court has declared and applied in their case. If the state court's judgment has binding final effect under the state law the rights of the parties can only be what the court has held them to be. It is for this reason that the federal court should not in a case of this kind make an independent examination and application of state law. For if it reaches a different conclusion from the state court as to what the parties' rights should be under the state law its decision will not change those rights which will necessarily remain what the state court has declared them to be."

See Flitcroft v. Commissioner, 328 F.2d 449 (9th Cir. 1964); Estate of Darlington v. Commissioner, 302 F.2d 693 (3d Cir. 1962); Eisenmenger v. Commissioner, 145 F.2d 103 (8th Cir. 1944); Sharpe v. Commissioner, 107 F.2d 13 (3d Cir. 1939), cert. denied, 309 U.S. 665, 60 S.Ct. 591, 84 L.Ed. 1013 (1940).

It may fairly be said, we think, that the question is an open one in this circuit. (However, compare Kelly's Trust v. Commissioner, 168 F.2d 198 (2d Cir. 1948). The decision in Second National Bank v. United States, 351 F.2d 489 (2d Cir. 1965), was based, as the court makes clear,[5] on the holding that the determination of the Connecticut Probate Court was not authoritative in Connecticut.

■ An able Tax Court judge quite explicitly undertook to balance several relevant factors (see pp. 2494–2495 supra) before deciding to accept the New York judgment as authoritative of the rights of parties. We, too, have considered all of the circumstances and feel that the decision below was correct. We hold that the New York judgment, rendered by a court which had jurisdiction over parties and subject matter, authoritatively settled the rights of the parties, not only for New York, but also for purposes of the application to those rights of the relevant provisions of federal tax law. Mrs. Bosch now has a general power of appointment under the trust. The corpus of the trust therefore qualifies for the marital deduction.

gation in State Courts, N.Y.U. 21st Inst. on Fed. Tax., 277 (1963); Stephens & Freeland, The Role of Local Law and Local Adjudication in Federal Tax Controversies, 46 Minn.L.Rev. 223 (1961); Note, Binding Effect of a Nonadversary State Court Decree in a Federal Tax Determination, 33 Fordham L.Rev. 705 (1965); Note, Effect of State Court Decrees in Federal Tax Litigation, 30 U. of Chi.L.Rev. 569 (1963); Note, The Role of State Law in Federal Tax Determination, 72 Harv.L.Rev. 1350 (1959).

5. "The trial court after carefully considering the arguments and the many relevant decisions concluded that 'the decrees of the Connecticut Probate Court—which is not a court of record and most of the judges of which are laymen, not lawyers—under no circumstances can be construed as binding and conclusive upon a federal court in construing and applying the federal revenue laws.' 222 F.Supp. [446,] at 457. This court is in accord with the trial court's conclusion as to the effect of the state decree, see Estate of Peyton v. Commissioner, 323 F.2d 438 (8th Cir. 1963), since under Connecticut law the Probate Court's decisions are not binding on the state's higher courts, Heiser v. Morgan Guaranty Trust Co., 150 Conn. 563, 192 A.2d 44 (1963), and are even subject to collateral attack in another probate district, Culver's Appeal from Probate, 48 Conn. 165, 172–174 (1880). Under the circumstances, it was unnecessary 'to make a finding as to whether the proceedings in the Probate Court were collusive or nonadversary in nature' and the court properly refrained from so doing." 351 F.2d at 494.

The decision of the Tax Court is affirmed.

FRIENDLY, Circuit Judge (dissenting).

The Commissioner's appeal concerns an important problem in the administration of the revenue laws—the conclusiveness of a judgment of a lower state court, typically in an intra-family setting, that determines property interests entailing federal tax consequences. The Supreme Court has not spoken to the point for nearly thirty years. Difficulties arise because of the practical unacceptability of the strictly logical polar positions; that the judgment of an inferior state court not binding as *res judicata* can never be more than rebuttable evidence of state law, and that any such judgment which is effective as a determination of property rights among the parties is conclusive upon the federal fisc. The former position could operate unfairly in the many cases where persons having a genuine controversy over property rights desire resolution by an appropriate local tribunal without wishing to press their differences to the highest court of the state. The latter would permit citizens, unwilling to accept the tax consequences of actions taken by them or their decedents, to evade federal taxes by taking advantage of an unwitting lower state tribunal.

The compounding of factual variables, the somewhat intractable nature of the problem, and the cryptic character of the Supreme Court's rather dated pronouncements, see Freuler v. Helvering, 291 U.S. 35, 43–47, 54 S.Ct. 308, 78 L.Ed. 634 (1934); Blair v. C. I. R., 300 U.S. 5, 9–10, 57 S.Ct. 330, 81 L.Ed. 465 (1937); and Sharp v. C. I. R., 303 U.S. 624, 58 S.Ct. 748, 82 L.Ed. 1087 (1938), have created widespread conflict among the circuits. Contrast, e. g., Saulsbury v. United States, 199 F.2d 578 (5 Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342 (1953); Stallworth's Estate v. C. I. R., 260 F.2d 760 (5 Cir. 1958); Sweet's Estate v. C. I. R., 234 F.2d 401 (10 Cir.), cert. denied, 352 U.S. 878, 77 S.Ct. 100, 1 L.Ed.2d 79 (1956); and Faulkerson's Estate v. U. S., 301 F.2d 231 (7 Cir.), cert. denied, 371 U.S. 887, 83 S.Ct. 182, 9 L.Ed.2d 121 (1962), refusing to give effect to state judgments, with Gallagher v. Smith, 223 F.2d 218 (3 Cir. 1955); Darlington's Estate v. C. I. R., 302 F.2d 693 (3 Cir. 1962), and Goodwin's Estate v. C. I. R., 201 F.2d 576 (6 Cir. 1953), doing the opposite. The Fourth Circuit has declined to give effect to a lower state court judgment with respect to a widow's power of appointment rendered under circumstances quite similar to those here, Pierpont's Estate v. C. I. R., 336 F.2d 277, 281–282 (1964), cert. denied, 380 U.S. 908, 85 S.Ct. 890, 13 L.Ed.2d 795 (1965), distinguishing its earlier decision in Pitts v. Hamrick, 4 Cir., 228 F.2d 486 (1955), and expressly refusing to follow the rule of the Third Circuit which my brothers adopt. The Eighth Circuit seems to be less deferential to state judgments now than it used to be. Contrast Straight's Trust v. C. I. R., 245 F.2d 327 (1957), and Peyton's Estate v. C. I. R., 323 F.2d 438 (1963), with Helvering v. Rhodes' Estate, 117 F.2d 509 (1941); and Eisenmenger v. C. I. R., 145 F.2d 103 (1944). The Ninth Circuit appears to be more so. Contrast Flitcroft v. C. I. R., 328 F.2d 449 (1964), with Newman v. C. I. R., 222 F.2d 131 (1955), and Wolfsen v. Smyth, 223 F.2d 111 (1955). The conflict among the judges is echoed among the commentators. Most of them disapprove the acquiescent attitude now identified with the Third Circuit. See, e. g., Cardozo, Federal Taxes and the Radiating Potencies of State Court Decisions, 51 Yale L.J. 783 (1942); Cahn, Local Law in Federal Taxation, 52 Yale L.J. 799, 818–19 (1943); Oliver, The Nature of the Compulsive Effect of State Law in Federal Tax Proceedings, 41 Calif.L.Rev. 638 (1953); Stephens and Freeland, The Role of Local Law and Local Adjudications in Federal Tax Controversies, 46 Minn.L.Rev. 223, 242–51 (1961); Braverman & Gerson, The Conclusiveness of State Court Decrees in Federal Tax Litigation, 17 Tax L.Rev. 545 (1962); Note, Effect of State Court Decrees in Federal

Tax Litigation: A Proposal for Judicial Reform, 30 U.Chi.L.Rev. 569 (1963); Sacks, The Binding Effect of Nontax Litigation in State Courts, N.Y.U. 21st Inst. on Fed. Tax. 277 (1963). But the Third Circuit also has a defender. See Note, The Binding Effect of a Nonadversary State Court Decree in a Federal Tax Determination, 33 Fordham L.Rev. 705 (1965). With our own court uncommitted,[1] I regret my brothers' vote to align ourselves with the rather mechanical view of the Third Circuit rather than the more realistic one of the Fourth and Fifth, thereby needlessly handicapping the Commissioner in the fair and equal enforcement of the federal revenue laws. I would hold that when it is evident that state court litigation has been brought primarily to have an effect on federal taxes, the judgment of an inferior state court adjudicating property rights is entitled to little weight, and that when the state court has not had the benefit of a fair presentation of both sides of the controversy, it is entitled to none. While these principles will not resolve all cases, they are ample to decide this one.

When Herman Bosch died in 1957, the critical date for determining taxes on his estate, his wife had only a special power of appointment over the trust whose status is here in question. Admittedly this was all she purported to have and all she or her husband thought she had. So long as Mr. Bosch lived, no one had questioned the validity of the partial release of the quondam general power, least of all the experienced attorneys who had recommended it. Nor was there any

basis for doing so. There had indeed been New York decisions that a power of appointment by will, whether or not contingent on the donee's surviving the donor, could not be released since this would defeat the purpose of preserving the donee's freedom of action until death. Learned v. Tallmadge, 26 Barb. 443 (1856); Farmers' Loan and Trust Co. v. Mortimer, 219 N.Y. 290, 114 N.E. 389 (1916). But, upon enactment of the Revenue Act of 1942, thenceforth taxing all property subject to a preexisting general power of appointment unless this was released by a specified date,[2] New York's legislature moved swiftly to permit holders to rid themselves of such powers in whole or in part. The statute, Real Property Law § 183, was phrased in the broadest terms:

> "Any power which is exercisable by deed, by will, by deed or will, or otherwise, whether general or special, other than a power in trust which is imperative, is releaseable * * * with respect to the whole or any part of the property subject to such power and may also be released in such manner as to reduce or limit the persons or objects, or classes of persons or objects, in whose favor such power would otherwise be exercisable."

Nothing in the language suggests a desire to except powers that were, like Mrs. Bosch's, contingent on the donee's surviving the settlor or destructible by the settlor's amending or revoking the trust;[3] "exercisable" would not normally be read as including only cases where the exercise would be effective if the

---

1. The decision in Kelly's Trust v. C. I. R., 168 F.2d 198 (2 Cir. 1948), is inapposite in my view since the deference given to the state court adjudication was on the basis that its "appeal made it adversary, * * * especially as, on appeal from the state-court judgment, one judge dissented." 168 F.2d at 198–199.

2. Initially this was January 1, 1943, 56 Stat. 944. Later Congress successively granted postponements until November 1, 1951, and made clear that a partial release would qualify. See Powers of Appointment Act of 1951. 65 Stat. 91; S. Rep. No. 382, 82d Cong., 1st Sess. 2–8,

1951 U.S.Code Cong. & Ad.News 1530–1537; Int.Rev.Code of 1954, § 2041(a)(1).

3. We have been cited to no New York cases that had ever drawn this distinction. The one New York case cited by the Supreme Court Justice, In re Piffard, 111 N.Y. 410, 18 N.E. 718, 2 L.R.A. 193 (1888), held that although a power of appointment granted by will could not have been exercised as such by a donee who predeceased the testator, the latter's will should be read as incorporating the legatee's disposition.

donee died the next minute. And there was no reason why New York's legislature should thus fail in part to enable its citizens to do what Congress contemplated they might. Unless such a contingent power was partially released before the end of the grace period accorded by Congress, the settlor's death would leave the donee in the same unenviable position as any other holder of a general power created on or before October 21, 1942, where any exercise, although in favor of persons other than the donee, his estate, or their creditors, would result in the inclusion in his estate of the property over which he held the power—just what the release here suggested by the trustee in October 1951 was meant to avoid. Since there is no apparent reason why the New York legislature should have wished to discriminate against holders of contingent or revocable powers and the language affords no indication that it did, it is not surprising that what appears to be the only New York case raising the problem in a truly adversary context held that the contingent nature of a power of appointment, in that instance upon death of the donee without issue, did not prevent release under § 183, In re Woodcock's Will, 19 Misc.2d 268, 186 N.Y.S.2d 447, 450 (Surr. Ct. Westchester Co. 1959).[4] This was the unpropitious background in which the attorneys who had counseled that Mrs. Bosch convert her general power into a special one in 1951 determined to engage in what the Commissioner has aptly characterized as *post mortem* estate planning, regaining for her through the New York courts a general power she no longer had at Mr. Bosch's death.

The only reason advanced by the trustee for seeking a declaration as to the validity of the release was the effect on the trust's liability for its share of the taxes on Mr. Bosch's estate—allegedly only $930 if the release was not valid but $21,479 if it was. The trustee's petition to the New York court gave no reason why determination of that question by the Tax Court in the litigation there pending would not fully protect it. The brief for Mrs. Bosch, joining in the trustee's request that the release be declared invalid, made no suggestion that she desired to avail herself of the released power to appoint by will to herself, her estate or her creditors. Indeed, her regaining the general power made it less likely that she would exercise it in any respect. Under the Internal Revenue Code of 1954, § 2041(a) (1), while any exercise of the power would cause the trust property to be included in her estate, failure to exercise it would produce the optimum result of availability of the trust property for the marital deduction in Mr. Bosch's estate and freedom from taxation in his widow's—a feat which could not have been accomplished by revocation of the trust during Mr. Bosch's life. In default of appointment the trust was to be divided equally between the then next of kin of the two spouses; the interest of the many persons cited as presumptive remaindermen, taken as a class, thus also favored a declaration of invalidity which would make exercise in favor of Mrs. Bosch's relatives less likely, as was conceded in the brief filed by a guardian *ad litem* for a relative of Mr. Bosch, the only remainderman to take a position. Mrs. Bosch in no way indicated that if the release was held valid, she would exercise her special power in favor of any particular person, who might thus be interested in urging validity. The briefs, filed by the trustee, Mrs. Bosch and

4. Any shadow of doubt has been dissipated by § 146 of the new Article 5 of the Real Property Law, added by Laws 1964, c. 864, effective June 1, 1965, which was not called to the attention of the Tax Court—or to us. This section provides that the donee of a power not presently exercisable cannot contract to make an appointment but "[t]he provisions of this section shall not, in any way, abridge the ability of the donee of a power of appointment not presently exercisable, to release his power, in whole or in part, pursuant to the provisions of section one hundred and forty-three * * *." Section 143 is old § 183. It is thus apparent that no other New Yorker in Mrs. Bosch's situation can ever obtain a ruling like that made here.

the guardian, treated the invalidity of the release as almost beyond reasonable debate. The attorneys for the trustee did not inform the court on what basis they had recommended action in 1951 which they now considered so plainly a nullity— something as to which they would have been questioned sharply in a truly adversary proceeding. The sole relevant authority, In re Woodcock's Will, supra, was not cited, and the legislative purpose behind § 183 was not explored. Under these circumstances it is not to be wondered that a judge sitting in the busy motion part of the Supreme Court for New York County should have erroneously ratified the parties' unanimous contention, citing only the inapposite decision of In re Piffard, see n. 3.

The case thus fits perfectly the description cited by way of contrast in Freuler v. Helvering, supra, where "all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional * * * tax." 291 U.S. at 45, 54 S.Ct. at 312. The problem in this area has been bedeviled by iteration of terms such as "collusive" or "non-adversary." To require proof of collusion in the normal sense of prearrangement would impose a nigh impossible burden on the Commissioner; yet a court shrinks from using such an opprobrious epithet when no prearrangement has been shown. Again, while a proceeding in which, for example, a life tenant with what appears to be a limited right to invade principal

seeks a declaration of absolute ownership is surely "adversary" in a formal sense, it may not be in a practical one, as when the life tenant is an aged mother seeking to qualify a bequest for the marital deduction and the remaindermen are her adult sons. See Peyton's Estate v. C. I. R., supra, 323 F.2d 438. What makes this case so easy is that the state court proceeding had no significant purpose other than the reduction of tax liability; Mrs. Bosch was not shown to have the slightest intention of using the general power the New York court was led to thrust upon her, or even the special one if she was held to have only that. In a practical sense the decision was thus devoid of any effect except on taxes.[5] There was no question affecting the integrity of the corpus, as in *Freuler*, or the assignability of the beneficiary's right to income, as in Blair v. C. I. R., supra. In such a case the considerations for respecting the determination of a lower court which is not the product of a weighing of opposing arguments approach zero.[6] One well-considered article has said: "Whenever all parties to the state court proceeding approve and have never opposed the proffered result, and the decree embodying it appears to serve no purpose other than to avoid federal taxation, the decree should not be regarded as determinative of the state law property rights purportedly adjudicated." Braverman & Gerson, supra, 17 Tax L. Rev. at 576. Another comment suggests that "If a taxpayer, intending to avoid

---

5. It is immaterial that if Mrs. Bosch should choose to exercise the power in favor of her own relatives, she would subject her estate to a tax—apparently much smaller than the sum here at issue —which would have been saved if the release had not been attacked. The *post mortem* estate planning condemned in Pierpont's Estate v. C. I. R., supra, 336 F.2d 277, and Peyton's Estate v. C. I. R., supra, 323 F.2d 438, would also have increased the estate tax payable on the widow's death.

6. I fail to see the significance attributed by my brothers to the Commissioner's knowledge of the New York proceeding or his courtesy in awaiting its outcome. For

twenty years the announced policy of the Internal Revenue Service, surely well known to the appropriate committees of Congress, has been not to intervene in such suits and to move to dismiss if made a party. Mim. 6134 (1947). The reasons are obvious—insufficient staff, unfamiliarity with state procedures, and lack of standing to intervene and thus to appeal unless, indeed, the Commissioner were to concede the very point of the conclusiveness of the state judgment which he properly disputes. In the absence of contrary congressional direction the United States is entitled to litigate liability for federal taxes in its own courts. Compare Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957).

tax liability, institutes a state suit, and if no interested party presents the argument urged by the Commissioner, then the state court judgment should be considered to have been collusively obtained." Note, supra, 30 U.Chi.L.Rev. at 581. A third proposes that a state court adjudication of property rights be respected "unless it was obtained by collusion, i. e., for the sole and single purpose of defeating the federal tax imposed upon those rights." Sacks, supra, N.Y.U. 21st Inst. on Fed.Tax. at 295. It is unnecessary to choose among these formulations; all call for reversal here.